[No. 49968-8-I. Division One. December 30, 2002.]

*In the Matter of the Personal Restraint of* WILLIAM G. DUTCHER, *Petitioner.*

*Eric J. Nielsen* (of *Nielsen, Broman & Koch, P.L.L.C.*), for petitioner.

*Christine O. Gregoire, Attorney General,* and *Gregory J. Rosen, Assistant,* for respondent.

ELLINGTON, J. — The legislature has provided that an inmate may earn early release credits and become eligible for early release into community custody, and that eligibility for community custody depends upon the merits of the offender's release plan. The fact that the Department of Corrections (DOC) has decided to refer the offender for a civil commitment hearing does not change the department's obligation, under the statute, to consider the inmate's plan for community custody. The DOC thus had no authority to adopt a policy preventing William Dutcher from submitting a release plan and preventing its staff from investigating the plan. We grant Dutcher's personal restraint petition and direct DOC to permit Dutcher to submit a community custody plan for investigation.

## FACTS

William Dutcher was convicted of communicating with a minor for immoral purposes, a crime he committed in September, 1998. The court sentenced him to the high end of the standard range (which was also the statutory maximum), 60 months, and imposed 36 months of community custody. Dutcher has earned 20 months of early release credits, making him eligible for community custody in lieu of earned early release as of January 16, 2002.[1] On January 19, 2002, the Department of Corrections informed Dutcher he would not be permitted to submit a plan for community custody because the End of Sentence Review Committee

---

[1] *See* former RCW 9.94A.150(2) (1996) (sex offenders eligible for community custody in lieu of earned early release) and .150(1) (aggregate earned early release time cannot exceed one-third of the total sentence), *recodified as* RCW 9.94A.728 by LAWS OF 2001, ch. 10, § 6.

(ESRC) had voted to refer him for civil commitment as a sexually violent predator, and under amended DOC Policy 350.200, the referral precludes community custody. Dutcher filed this personal restraint petition, asserting that the policy violates the governing statute, due process, and the ex post facto clause.

## DISCUSSION

An inmate's interest in his earned early release credits is a limited, but protected, liberty interest.[2] Likewise, the department's compliance with requirements of a statute affecting his release is a protected liberty interest.[3] When an inmate challenges a decision from which he has had "no previous or alternative avenue for obtaining state judicial review," RAP 16.4(a) requires that he show that he has been restrained, and that the restraint is unlawful.[4] A decision by the DOC that, in essence, deprives an inmate of earned early release into community custody is such a decision.[5]

The DOC is required by statute to establish an incentive program allowing inmates to earn early release days for good behavior.[6] For sex offenders, early release is available only by way of a transfer to community custody status: "[a] person convicted of a sex offense . . . may become eligible, in accordance with a program developed by the department, for transfer to community custody status in lieu of earned early release time . . . ."[7] Community custody is "the intense monitoring of an offender in the community."[8]

---

[2] *In re Pers. Restraint of Crowder*, 97 Wn. App. 598, 600, 985 P.2d 944 (1999).

[3] *In re Pers. Restraint of Cashaw*, 123 Wn.2d 138, 144, 866 P.2d 8 (1994).

[4] *Cashaw*, 123 Wn.2d at 148-49.

[5] *In re Pers. Restraint of Capello*, 106 Wn. App. 576, 580-81, 24 P.3d 1074 (2001).

[6] Former RCW 9.94A.150(1).

[7] Former RCW 9.94A.150(2).

[8] *Crowder*, 97 Wn. App. at 600.

At the time Dutcher committed his crime in 1998, the program developed pursuant to this statute was embodied in former DOC Policy 350.200. The 1996 policy required DOC staff to help inmates put together viable plans for release into community custody:

> Institution counselors/work release community corrections officers (CCOs) are to work with an offender to develop the most appropriate release plan that will not violate conditions of the J&S (judgment and sentence), nor place the offender in a situation where she/he is likely to re-offend, and enter the results on OBTS (offender-based tracking system) DT37. Institution counselors/designees or work release/pre-release CCOs shall establish a community release residence with the offender and obtain confirmation from the sponsor after advising the sponsor that local law enforcement may conduct community notification (if the offender will be subject of a Special Bulletin or Law Enforcement Notification Bulletin as noted on DT07).[9]

Four months before the inmate's early release date, this policy required DOC staff to refer the release plan for investigation by a community corrections officer in the proposed county of release.[10] If the investigation showed the plan was viable, did not place the offender at a likely risk to reoffend, and did not violate court-imposed conditions, the offender was transferred to community custody on his early release date unless a sexually violent predator petition was filed.[11]

In May 2001, DOC Policy 350.200 was amended to prevent DOC staff from investigating or approving the release plans of inmates who have been referred for civil commitment as sexually violent predators:

> Staff will not refer the plan [for investigation] if the End of Sentence Review Committee has determined that the offender appears to meet the definition of a sexually violent predator *and s/he has been referred for Civil Commitment* under RCW 71.09.

---

[9] DOC Policy 350.200.

[10] DOC Policy 350.200.

[11] DOC Policy 350.200; RCW 71.09.040(1).

. . . .

The CCO will deny plans if the End of Sentence Review Committee has determined that the offender appears to meet the definition of a sexually violent predator *and s/he has been referred for Civil Commitment* under RCW 71.09.[12]

 Under the amended policy, DOC refused to permit Dutcher to submit a plan. But while ESRC has "voted" to refer Dutcher for civil commitment, it has not in fact done so. DOC's refusal to accept or investigate a community custody plan before Dutcher's early release date therefore violates the department's own policy.

Despite the policy language stating DOC will deny plans only after an actual referral, ESRC does not forward a commitment referral to prosecuting authorities until three months before an inmate's final release date. All such offenders therefore effectively lose all earned early release credits. DOC contends that RCW 71.09.025(1) "appears to prevent" a referral from occurring earlier.[13] We disagree. The statute requires the referral be made three months before the offender's "anticipated release from total confinement."[14] The statute is titled "Notice to prosecuting attorney prior to release." Nothing in the statute specifies notice only at the final release date, as opposed to the earned early release date. The clear purpose of this section is simply to provide adequate notice to prosecutors so petitions can be filed before inmates are released.

DOC contends that even if it has violated its own policy, Dutcher cannot show prejudice because the ESRC has voted to refer him, so he will be referred in the near future before his final release date.[15] We reject this argument.

---

[12] Amended DOC Policy 350.200 (emphasis added).

[13] Br. of Resp't at 6.

[14] RCW 71.09.025(1)(a)(i).

[15] ESRC apparently does not forward a commitment referral until four months before an inmate's final release date. All such offenders therefore effectively lose all earned early release credits.

First, Dutcher is not required to show prejudice;[16] rather, he need show only that his restraint is unlawful.[17] DOC failed to follow its own procedures, and Dutcher has therefore made the requisite showing.[18] Second, the department's leisurely approach to referral means that even if the referral is rejected by the prosecutor, Dutcher will have lost the benefit of his earned release credits. Dutcher has therefore shown prejudice.

Even if the department had followed its own procedures, the amendments to DOC Policy 350.200 conflict with the statutes governing eligibility for community custody in lieu of earned early release. Under the amended policy, sex offenders who have been referred for a civil commitment hearing by the ESRC can *never* become eligible for community custody status in lieu of earned early release. But under the plain language of former RCW 9.94A.150(2) (1996), all sex offenders have the opportunity to become eligible for community custody:

> *A person convicted of a sex offense . . . may become eligible*, in accordance with a program developed by the department, *for transfer to community custody status* in lieu of earned early release time pursuant to subsection (1) of this section . . . .[19]

DOC contends its authority to develop an eligibility program gives it the authority to categorically exclude offenders who have been referred for civil commitment. The statute, however, applies to all sex offenders, and does not exempt—or authorize DOC to exempt—those referred for a civil commitment hearing.[20]

Former RCW 9.94A.150(2) was amended effective March 14, 2002. New subsections expressly direct the DOC to

---

[16] *See In re Pers. Restraint of Mines*, 146 Wn.2d 279, 290, 45 P.3d 535 (2002); *Cashaw*, 123 Wn.2d at 148-49; *Capello*, 106 Wn. App. at 580-81; RAP 16.4.

[17] *See Cashaw*, 123 Wn.2d at 149.

[18] *See In re Pers. Restraint of Marler*, 108 Wn. App. 799, 810, 33 P.3d 743 (2001); *Cashaw*, 123 Wn.2d at 147-48.

[19] Former RCW 9.94A.150(2) (emphasis added).

[20] *See* former RCW 9.94A.150(2).

make decisions about eligibility for early release based on the merits of an offender's release plan:

> (c) The department *shall*, as a part of its program for release to the community in lieu of earned release, *require the offender to propose a release plan* that includes an approved residence and living arrangement. All offenders with community placement or community custody terms eligible for release to community custody status in lieu of earned release shall provide an approved residence and living arrangement prior to release to the community;
>
> (d) The department may deny transfer to community custody status in lieu of earned release time pursuant to subsection (1) of this section if *the department determines an offender's release plan*, including proposed residence location and living arrangements, may violate the conditions of the sentence or conditions of supervision, place the offender at risk to violate the conditions of the sentence, place the offender at risk to reoffend, or present a risk to victim safety or community safety. . . .[21]

While this statute does not apply here because of its effective date, we find it instructive because nothing in its language suggests that an ESRC referral to civil commitment changes the mandatory duty of the department to require a release plan, or permits denial of transfer to community custody simply because of the referral. Rather, the statute compels DOC to require offenders to develop a release plan, and requires DOC to base its community custody eligibility decisions on the merits of the release plan.

We recognize that an offender identified by the ESRC as meeting the definition of a sexually violent predator may have a slim chance of approval of a release plan while a referral is pending. But neither the former nor the amended versions of RCW 9.94A.150(2) permits DOC to substitute the ESRC's decision for one based on review of a release plan.

---

[21] RCW 9.94A.728(2)(c), (d) (emphasis added).

DOC argues its policy is authorized by RCW 72.09.340(1), RCW 72.09.345(2) and (4), or some combination thereof. We disagree.

■ RCW 72.09.340 simply sets forth a general policy for review of offender release plans:

> (1) In making all discretionary decisions *regarding release plans* for and supervision of sex offenders, the department shall set priorities and make decisions based on an assessment of public safety risks.[22]

DOC is correct that this statute directs the department, in its discretion, to make eligibility determinations based on public safety. But the statute clearly contemplates that such decisions will be based on the merits of a release plan, and nowhere offers any authority for dispensing with such plans altogether.

■ RCW 72.09.345 establishes the End of Sentence Review Committee and describes its various functions:

> (2) In order for public agencies to have the information necessary to notify the public as authorized in RCW 4.24.550, the secretary shall establish and administer an end-of-sentence review committee for the purposes of assigning risk levels, *reviewing available release plans*, and making appropriate referrals for sex offenders. The committee shall assess, on a case-by-case basis, the public risk posed by sex offenders who are: (a) Preparing for their release from confinement for sex offenses committed on or after July 1, 1984 . . . .
>
> . . . .
>
> (4) The committee shall review each sex offender under its authority before the offender's release from confinement or start of the offender's term of community placement or community custody in order to: (a) Classify the offender into a risk level for the purposes of public notification under RCW 4.24.550; (b) *where available, review the offender's proposed release plan* in accordance with the requirements of RCW 72.09.340; and (c) make appropriate referrals.[23]

---

[22] RCW 72.09.340(1) (emphasis added).

[23] RCW 72.09.345(2), (4) (emphasis added).

This statute says nothing about the process for determining community custody eligibility, and clearly envisions the existence of release plans for the ESRC to review.

While Amended DOC Policy 350.200 appears superficially sensible and administratively efficient, it is at odds with both public safety and the purpose of earned early release. The effect of the amended policy is that ESRC makes its commitment referral determination before the offender's anticipated early release date. If it decides that a referral is appropriate, however, it does not formally refer the inmate until three months before the final release date, thereby preventing any possibility that the inmate's early release credits will be realized. Early release programs are important prison management tools, which help DOC maintain control over the prison population by providing an incentive for an inmate to conform his behavior to prison rules.[24] Denying earned early release credits to every sex offender DOC believes eligible for eventual referral to civil commitment leaves a dangerous class of inmates with little reason to obey prison rules or participate in prison treatment programs.[25]

Further, for two-thirds of those referred by ESRC, no civil commitment proceedings are even initiated.[26] Prison treatment programs may therefore be the best, and perhaps the only, possibility of addressing potential recidivism with these offenders. An inmate whose motivation to engage in treatment programs is the possibility of earning early release credits, but who is ineligible for release because of the potential referral, may well end up in the community without benefit of treatment.

For the same reasons, these offenders may also end up in the community without a release plan. One of the primary

---

[24] *State v. Brown*, 142 Wn.2d 57, 62, 11 P.3d 818 (2000).

[25] *See Brown*, 142 Wn.2d at 60.

[26] Donna Schram & Cheryl Darling Milloy, Washington State Institute for Public Policy, Sexually Violent Predators and Civil Commitment: A Study of the Characteristics and Recidivism of Sex Offenders Considered for Civil Commitment But for Whom Proceedings Were Declined (1998).

purposes of community custody is to protect the public by supervising offenders based on the risk they pose to community safety.[27] A comprehensive release plan helps minimize the risk of reoffense. Offenders referred by ESRC but for whom civil commitment proceedings are not initiated will reach their final release dates with no release plans whatsoever. These are among the offenders most likely to reoffend.[28]

Some of these offenders will have arrived at the limits of the State's jurisdiction and will not even be subject to supervision.[29] Dutcher's last crime was a class C felony; his statutory maximum punishment is 60 months. The sentencing judge imposed 60 months' incarceration, but anticipated earned early release into community custody. But DOC's policy leaves Dutcher in full custody for the entire 60 months. DOC will be required to release him without any community custody supervision should the ESRC referral fail to result in a civil commitment.[30]

The public would be best served if a sex offender has developed a viable release plan when the time comes for return to the community. The community custody system was designed in part to help an offender become established in the community and minimize his risk to reoffend.[31] Amended DOC Policy 350.200 contravenes this objective.

 The legislature has required the department to make its early release decisions based upon plans proposed by inmates and reviewed by the department, and has (we

---

[27] *See* STATE OF WASHINGTON SENTENCING GUIDELINES COMMISSION, ADULT SENTENCING GUIDELINES MANUAL 2001, at I-33.

[28] SCHRAM & MILLOY, *supra*, at 9-11 n.26.

[29] *See* RCW 9.94A.505(5) (total confinement and supervision cannot exceed statutory maximum).

[30] Dutcher contends this is likely, on the ground that his present incarceration is for communicating with a minor for immoral purposes, which is not a sexually violent offense under RCW 71.09.020(15), so he cannot be civilly committed unless the State proves he committed a recent overt act. RCW 71.09.030(5). Dutcher contends the State cannot so demonstrate.

[31] *See* RCW 9.94A.728(2); ADULT SENTENCING GUIDELINES MANUAL 2001, *supra*, at I-33 n.27.

believe wisely) not authorized any exemption from this process simply because ESRC believes the offender qualifies for a civil commitment hearing. Amended DOC Policy 350.200 therefore violates the governing statutes. In Dutcher's case, no referral has ever been made; even if the amended policy were valid, it did not permit the department's action. Dutcher's restraint was unlawful, and we grant his petition. The DOC must permit Dutcher to submit a community custody plan for investigation.[32]

Petition granted.

BECKER, C.J., and KENNEDY, J., concur.

---
[32] In light of our disposition, we do not address Dutcher's other arguments.