111 P.3d 1227 (2005)
In the Matter of the PERSONAL RESTRAINT PETITION OF Jeffrey LIPTRAP, Daniel Norwood, and Joe Sellers, Petitioners.
No. 54730-5-I.
Court of Appeals of Washington, Division 1.
May 16, 2005.
*1229 Hank Balson, Suzanne Elliot, Seattle, WA, for Appellants.
Gregory Rosen, John Scott Blonien, Asst. Atty Generals-CJD, Olympia WA, for Respondent.
BECKER, J.
¶ 1 The Legislature has provided that an inmate who is a sex offender may earn early release credits, and transfer into community custody in lieu of early release if the Department of Corrections approves the inmate's release plan.
¶ 2 The Department of Corrections has adopted a new policy of refusing to consider a plan for transferring an inmate into community custody until a forensic evaluation is completed that indicates whether or not the inmate meets the criteria for referral for civil commitment. As applied to the petitioners, the new policy effectively deprived them of their opportunity to benefit from their earned early release credits. The department did not even assign an evaluator until months after the inmates' earned early release dates had passed and their release plans had been submitted.
¶ 3 The Legislature has not authorized the department to delay consideration of release plans while awaiting a forensic evaluation. The department's obligation to take action on an eligible prisoner's plan to transfer to community custody is independent of the decision to refer for civil commitment. We conclude the petitioners have shown an unlawful restraint.

FACTS
¶ 4 The petitioners are sex offenders imprisoned on convictions for sex offenses involving children. Petitioners Jeffrey Liptrap and Daniel Norwood are serving determinate sentences imposed under the Sentencing Reform Act, RCW ch. 9.94A. Petitioner Joe Sellers is serving an indeterminate sentence of maximum 20 years to life.
¶ 5 A statute requires the Department of Corrections to establish an incentive program that allows inmates to earn early release time for good behavior. RCW 9.94A.728. A person convicted of a sex offense cannot qualify for early release per se. Sex offenders belong to a class of inmates who "may become eligible ... for transfer to community custody status in lieu of earned release time". RCW 9.94A.728(2)(a). Thus, for sex offenders who earn time for good behavior, early release from confinement is available only by way of transfer to community custody. Community custody is the intense monitoring of an offender in the community. In re Personal Restraint Petition of Crowder, 97 Wash.App. 598, 600, 985 P.2d 944 (1999).
*1230 ¶ 6 By statute, the department may not release a sex offender into community custody without a release plan that includes an approved residence and living arrangements. RCW 9.94A.728(2)(c). The department may deny an inmate's transfer to community custody if the proposed release plan violates the conditions of sentence, places the offender at a risk to reoffend, or is unsatisfactory in terms of safety. RCW 9.94A.728(2)(d).
¶ 7 By the middle of 2003, Liptrap and Norwood had served enough time and earned enough early release credits to be eligible for transfer to community custody, subject to approval of their proposed release plans by the Department of Corrections. The Indeterminate Sentencing Review Board had found Sellers to be eligible for parole, subject to the department's approval of his release plan. All three inmates submitted release plans for the department's consideration.
¶ 8 At the time, the department's End of Sentence Review Committee was considering all three inmates for referral for possible sexual predator commitment proceedings under RCW ch. 71.09.[1] To determine whether an inmate meets the statutory criteria of a sexually violent predator, the Committee undertakes the task of gathering all the available files and documents on the inmate and converting them to an electronic format. The department then sends out the electronic files to be organized, either by the Attorney General's office or the Prosecutor's office in the county where the inmate was convicted. Once the electronic file is organized, the End of Sentence Review Committee gives it to a forensic psychologist assigned to complete an evaluation of the inmate.[2] If the evaluation concludes the inmate meets the statutory definition of a sexually violent predator, the department refers the inmate for possible civil commitment proceedings. See RCW 71.09.030. The entire process usually takes at least six months, and often takes longer because it is fraught with potential delay at every step.
¶ 9 In February 2003, the department adopted a policy limiting consideration of the early release plans of prisoners who were being considered for possible referral for sexual predator proceedings. The department instructed its staff not to approve or deny the proposed release plans for such prisoners unless and until a forensic psychological evaluation had been completed and was available for review. The new policy affected the petitioners. Departmental staff did not consider approving or denying their release plans, because all were being considered for referral for possible sexual predator commitment proceedings, and in each case, no forensic evaluation was yet available for review.
¶ 10 Liptrap submitted his plan three months before his earned early release date of August 18, 2003. It was not until December 2003 that the department arranged for his evaluation, which was completed in February, 2004. Norwood submitted a release plan four months before his earned early release date of July 14, 2003. An evaluation of Norwood was not completed until the end of December 2003. Sellers submitted a release plan on September 11, 2003. As of May, 2004, no evaluation had been completed for Sellers. In February 2004 petitioners sought a writ of mandamus from the State Supreme Court asking that the department (and in Sellers' case, the Board as well) be ordered to approve their release or parole plans without further delay. The petitioners alleged that the department was holding them, and other prisoners, in confinement long past their earned release dates or minimum terms, in violation of state statute and the requirements of due process. The Supreme Court converted the action to a personal restraint petition and transferred it to this court for review.
*1231 ¶ 11 When an inmate challenges an action from which he has had no previous or alternative avenue for obtaining state judicial review, we review the petition by examining the requirements of RAP 16.4. In re Personal Restraint Petition of Cashaw, 123 Wash.2d 138, 148-49, 866 P.2d 8 (1994). A personal restraint petitioner may obtain relief by showing either a constitutional violation or a violation of the laws of the State of Washington. RAP 16.4(c)(2), (6); Cashaw, 123 Wash.2d at 148, 866 P.2d 8.
¶ 12 Due process protects against the deprivation of life, liberty, or property. The threshold question in any due process challenge is whether the challenger has been deprived of a protected interest in life, liberty or property. Cashaw, 123 Wash.2d at 143, 866 P.2d 8. "An inmate's interest in his earned early release credits is a limited, but protected, liberty interest. Likewise, the department's compliance with requirements of statutes affecting his release is a protected liberty interest." In re Personal Restraint Petition of Dutcher, 114 Wash.App. 755, 758, 60 P.3d 635 (2002). A decision by the department that, in essence, deprives an inmate of earned early release into community custody is an unlawful restraint, subject to review by this court in a personal restraint petition. Dutcher, 114 Wash.App. at 758, 60 P.3d 635.

LIPTRAP AND NORWOOD
¶ 13 The department contends this court should summarily deny the petitions of Liptrap and Norwood as moot because they have already obtained the relief they requesteda decision on their proposed release plans. In the spring of 2004, the department rejected both of their plans.
¶ 14 Factors are present here that weigh in favor of reaching the merits though the petitions are technically moot. The proper administration of statutes governing earned early release involves community safety as well as the due process rights of prisoners. These are matters of continuing and substantial public interest. Whether delay in obtaining a forensic evaluation justifies delay in considering plans to transfer an inmate to community custody is an issue that is likely to recur, and also is likely to evade review because of the relatively short-lived duration of each case. See In re the Personal Restraint Petition of Mines, 146 Wash.2d 279, 285, 45 P.3d 535 (2002); Philadelphia II v. Gregoire, 128 Wash.2d 707, 712, 911 P.2d 389 (1996). Accordingly, we proceed to the merits.
¶ 15 The statute governing the department's obligations with respect to Liptrap and Norwood allows the department to deny a transfer to community custody to an otherwise eligible inmate if the offender's release plan is unsatisfactory:
(2)(a) A person convicted of a sex offense... may become eligible, in accordance with a program developed by the department, for transfer to community custody status in lieu of earned release time pursuant to subsection (1) of this section;
...
(c) The department shall, as a part of its program for release to the community in lieu of earned release, require the offender to propose a release plan that includes an approved residence and living arrangement. All offenders with community placement or community custody terms eligible for release to community custody status in lieu of earned release shall provide an approved residence and living arrangement prior to release to the community;
(d) The department may deny transfer to community custody status in lieu of earned release time pursuant to subsection (1) of this section if the department determines an offender's release plan, including proposed residence location and living arrangements, may violate the conditions of the sentence or conditions of supervision, place the offender at risk to violate the conditions of the sentence, place the offender at risk to reoffend, or present a risk to victim safety or community safety. The department's authority under this section is independent of any court-ordered condition of sentence or statutory provision regarding *1232 conditions for community custody or community placement.
RCW 9.94A.728(2)(a),(c),(d).
¶ 16 The provisions in subsections (c) and (d), spelling out what is required in a release plan and stating reasons why the department may deny a release plan, were added to the statute in 2002.[3] They are consistent with In re Personal Restraint of Crowder, 97 Wash. App. 598, 985 P.2d 944 (1999). Crowder claimed that the department unlawfully deprived him of his early release credits when it failed to release him until 101 days after he became eligible for community placement. This court found no violation of due process. The record showed that the department had pre-approved Crowder for early release but placement attempts did not succeed "for legitimate reasons", including Crowder's own withdrawal of a suggested plan.
¶ 17 Contrary to the department's reading, Crowder does not hold that the department has unlimited discretion to decide whether and when to consider an offender for transfer to community custody. Crowder attempted to make the department solely responsible for finding a suitable community placement for him before his early release date, and he argued he was entitled to a general release if no placement was available. We concluded his contention was "not borne out by the statutory scheme or the guidelines for the DOC program adopted in accord with that scheme." Crowder, 97 Wash.App. at 601, 985 P.2d 944. Unlike here, the department had not refused to consider Crowder's proposed plan; indeed, officials of the department had worked with Crowder and attempted to place him a number of times. Crowder, 97 Wash. App. at 601, 985 P.2d 944.
¶ 18 Several years later, the Dutcher case required us to decide whether the department has discretion to refuse to consider a proposed release plan. Dutcher, like Crowder and like the present petitioners, was a sex offender who had earned early release time for good behavior while in custody. The End of Sentence Review Committee decided to refer him for civil commitment as a sexually violent predator. According to the department policy at the time, staff would not investigate or approve release plans for inmates who had been referred for potential civil commitment. Dutcher, 114 Wash.App. at 759-60, 60 P.3d 635. The department refused to permit Dutcher to submit a community custody plan, and he sought relief.
¶ 19 The department argued that its authority to develop an eligibility program included the authority to categorically exclude offenders who had been referred for civil commitment. This, we found, conflicted with the statutory language that plainly allows all sex offenders the opportunity to become eligible for community custody:
The legislature has required the department to make its early release decisions based upon plans proposed by inmates and reviewed by the department, and has (we believe wisely) not authorized any exemption from this process simply because ESRC believes the offender qualifies for a civil commitment hearing. Amended DOC Policy 350.200 therefore violates the governing statutes.
Dutcher, 114 Wash.App. at 765-66, 60 P.3d 635. We directed the department to let Dutcher submit a release plan.
¶ 20 The department responded by allowing Dutcher and other similarly situated inmates to submit a release plan. But now, the department has instructed its staff not to investigate a release plan until a forensic psychological evaluation of the inmate is completed and available for review. An internal memo reflecting the department's response to the Dutcher decision, dated February 2003 and authored by the Assistant Deputy Secretary of the Department of Corrections, succinctly states the department's current practice. The memo spells out the duty of the Community Corrections Officer (CCO) to "pend" investigation of a proposed plan until a forensic report has been completed and reviewed:
Policy 350.200 will be updated and reflect the following:
 It will not exclude this category of offender from submitting a plan.

*1233  If an inmate has been referred for civil commitment as a sexually violent predator and found by the End of Sentence Review Committee to appear to meet the definition of a sexually violent predator, the CCO must, as part of their investigation of the plan, review the End of Sentence Review file.... CCOs must review all psychology reports, psychiatric reports and all forensic psyc reports. If a forensic psyc report is not yet available the CCO is to pend their investigation until one is completed and reviewed. Only after all information has been reviewed, may a plan be accepted or denied.
¶ 21 Petitioners argue the newly amended policy suffers from the same defect identified in Dutcher. That is, the department has created another unauthorized exemption from its obligation to timely review proposed plans on their merits. The department responds that the new policy protects community safety because it ensures a thoroughly informed decision by the community custody officer who reviews a proposed plan.
¶ 22 The record does not demonstrate that the department needed information learned in the forensic evaluation in order to reject Liptrap's and Norwood's release plans. The department denied Liptrap's release plan in May 2004 "due to day care close to proposed residence".[4] The department denied Norwood's release plan in March 2004 because his proposed address was in a neighborhood with many young children.[5] A residence near young children is a legitimate statutory reason for disapproving a release plan for a sex offender. RCW 72.09.340(3).[6] No reason appears why the department could not have rejected the proposed release plans months earlier, citing residence location as the reason.
¶ 23 There is of course no statute precluding the department from obtaining a forensic evaluation of a sex offender who is approaching his earned early release date. The petitioners do not question the department's right to do so. The issue raised by the petitioners is whether delay in obtaining an evaluation justifies delay in the consideration of the release plan.
¶ 24 The department justifies the delay on the basis of the grave risk that Liptrap and Norwood will reoffend, a risk well documented in their evaluations. The department is right to be concerned about the risk. But if there is to be extended confinement for sex offenders based on their risk of reoffense, it must be accomplished within the constraints of due process, such as the initiation of a civil commitment proceeding. Administrative delay in deciding whether a particular inmate qualifies for a civil commitment referral does not justify delay in consideration of the inmate's release plan, if he has become eligible for transfer into community custody.
¶ 25 As we said in Dutcher, a practice of institutionalized delay, though it may appear "superficially sensible and administratively efficient," is actually "at odds with both public safety and the purpose of earned early release." Dutcher, 114 Wash.App. at 764, 60 P.3d 635. Such a practice undercuts important policy objectives that are embodied in the statutes. First, early release credits have significance in prison management:

*1234 Early release programs are important prison management tools, which help DOC maintain control over the prison population by providing an incentive for an inmate to conform his behavior to prison rules. Denying earned early release credits to every sex offender DOC believes eligible for eventual referral to civil commitment leaves a dangerous class of inmates with little reason to obey prison rules or participate in prison treatment programs.
... An inmate whose motivation to engage in treatment programs is the possibility of earning early release credits, but who is ineligible for release because of the potential referral, may well end up in the community without benefit of treatment.
Dutcher, 114 Wash.App. at 764, 60 P.3d 635. Second, for many of the prisoners who are referred by the End of Sentence Review Committee, no civil commitment proceedings will be initiated.[7] A rule that keeps sex offenders in confinement long after their earned early release dates means that these prisonerswho are among the most likely to reoffendwill eventually arrive in the community without a comprehensive release plan and subject to little or no supervision. As we said in Dutcher, the "community custody system was designed in part to help an offender become established in the community and minimize his risk to reoffend." Dutcher, 114 Wash.App. at 765, 60 P.3d 635. A policy that arbitrarily delays consideration and approval of a viable release plan "contravenes this objective." Dutcher, 114 Wash.App. at 765, 60 P.3d 635.
¶ 26 The department must act on proposed release plans in a timely manner, so as to ensure the inmate has a genuine opportunity to benefit from the earned early release credits. In Crowder, the department followed its program, worked with the prisoner to identify a suitable placement, and eventually released him into community custody. His actual release came several months after his earned early release date, but the delay was justifiable because the placements he initially proposed were unsatisfactory. The department has not stated a legitimate reason for treating Liptrap and Norwood differently from Crowder.
¶ 27 We conclude that the department's application of its new policy to Liptrap and Norwood deprived them of earned early release credits in violation of due process. This practice should not continue.

SELLERS
¶ 28 Sellers persuasively argues for similar relief. Although an inmate under the jurisdiction of the Indeterminate Sentence Review Board generally does not have a liberty interest in being released before serving a full maximum sentence, the inmate "may be entitled to relief ... where the Board fails to follow the law or its own procedures." In Re Personal Restraint Petition of Marler, 108 Wash.App. 799, 810, 33 P.3d 743 (2001).
¶ 29 The board is required by statute to make decisions about an inmate's duration of confinement. RCW 9.95.009(2). We held in Marler that a board decision finding an inmate to be "conditionally parolable" subject to preparation by the Department of Corrections of a "Mutual Agreement Program" or MAP (essentially, a structured plan for transition to the community) "does not qualify as a decision on the duration of confinement unless the MAP process occurs within a predictable time frame." Marler, 108 Wash. App. at 810, 33 P.3d 743. Although a joint policy of the board and the department contemplated 90 days for development of a MAP, more than 14 months passed after the board determined Marler to be parolable, and the department had failed to develop a MAP for Marler. We concluded the board had unlawfully delegated its duty to make a decision on the duration of confinement to the department. Thus, remand to the board to ensure immediate implementation of a *1235 MAP was appropriate. Marler, 108 Wash. App. at 810-11, 33 P.3d 743.
¶ 30 Like in Marler, the Indeterminate Sentence Review Board found Sellers parolable, but subject to the department approving a reasonable parole plan. Sellers submitted a plan in September 2003. The department, having identified Sellers for potential civil commitment proceedings, postponed consideration of his parole plan pending a forensic psychological evaluation. The department did not assign a psychologist to perform the forensic evaluation until six months after Sellers submitted a parole plan. As of May 7, 2004, the department was still awaiting a completed evaluation for Sellers.[8]
¶ 31 Sellers' evaluator has since concluded that Sellers does not meet the statutory criteria for civil commitment, according to the representation made by petitioners' counsel at oral argument. Thus, Sellers' petition too is now technically moot; the department is no longer refusing to consider his release plan. We will reach the merits, however, for the same reasons as with Liptrap and Norwood.
¶ 32 The department has an obligation under RCW 72.04.070 to prepare conditions of supervision under which an inmate who is eligible for parole may be released from custody. Under the current form of policy 350.200, the department considers itself obligated to obtain a forensic psychological evaluation before preparing a supervision plan. The department's policy fails to ensure that a plan of supervision will be prepared within a reasonable time after the inmate becomes eligible for parole. Under the reasoning of Marler, the board's decision to make Sellers' parole subject to action by the department was not a duration of confinement decision. A determination that an inmate is parolable is illusory when conditioned upon review by the department, unless review can be completed within a predictable timeframe reasonably close to the parolability determination. Following Marler, we conclude that the board's decision to delegate approval of Sellers' parole plan to the department deprived him of his statutory right to a duration of confinement decision, in violation of due process.
¶ 33 In summary, the three petitioners have satisfied the requirements of RAP 16.4 and have shown unlawful restraint.
WE CONCUR: COLEMAN and AGID, JJ.
NOTES
[1] As the agency with the authority to direct the release of these inmates, the department has statutory authority to refer a person to the prosecuting attorney of the county where that person was charged when it appears that the person "may meet the criteria of a sexually violent predator". RCW 71.09.025(1)(a).
[2] Declaration of Kimberly Acker, the End of Sentence Review Program Manager and chair of the End of Sentence Review Committee.
[3] Laws of Washington 2002, Ch. 50, § 2.
[4] Offender Chronological Report of Jeffrey Liptrap, at 12.
[5] Offender Chronological Report of Daniel Sellers, at 19-21.
[6] The statute provides in relevant part:

"For any offender convicted of a felony sex offense against a minor victim after June 6, 1996, the department shall not approve a residence location if the proposed residence: (a) Includes a minor victim or child of similar age or circumstance as a previous victim who the department determines may be put at substantial risk of harm by the offender's residence in the household; or (b) is within close proximity of the current residence of a minor victim, unless the whereabouts of the minor victim cannot be determined or unless such a restriction would impede family reunification efforts ordered by the court or directed by the department of social and health services. The department is further authorized to reject a residence location if the proposed residence is within close proximity to schools, child care centers, playgrounds, or other grounds or facilities where children of similar age or circumstance as a previous victim are present who the department determines may be put at substantial risk of harm by the sex offender's residence at that location." RCW 72.09.340(3).
[7] In Dutcher, we cited a 1998 study stating that two-thirds of the prisoners referred by the Department do not actually become respondents in sexual predator proceedings. See Dutcher, 114 Wash.App. at 764 n. 26, 60 P.3d 635. At oral argument in this case, counsel for the department represented that according to a 2004 report, now 50 percent of the department's referrals result in civil commitment proceedings.
[8] Declaration of Kimberly Acker.