MILAN D. SMITH, JR., Circuit Judge,
concurring in the judgment:
I respectfully part ways with the majority. I do not believe that Washington State law creates a Fourteenth Amendment liberty interest in early release into community custody. The majority erroneously conjures a statutory liberty interest, protected by the Due Process Clause, out of Wash. Rev.Code § 9.94A.728(2) only by confusing “may” and “shall” and by reading “if’ to mean “only if.”
I.
“The preeminent canon of statutory construction requires us to presume that the legislature says in a statute what it means and means in a statute what it says there.” BedRoc Ltd. v. United States, 541 U.S. 176, 183, 124 S.Ct. 1587, 158 L.Ed.2d 338 (2004) (internal quotation marks and alterations omitted). Far from using “the more traditional mandatory language formula used in other early release statutes,” Maj. Op. at 666, section 9.94A.728(2)(d) instead uses traditional permissive “may ... if’ language used in statutes that create no liberty interest. Had the Washington State Legislature meant to write a statute limiting the discretion of the DOC, it could easily have said so. Section 9.94A.728(2)(d) states that the DOC “may deny” convicted sex offenders transfer to community custody “if’ it makes certain *671 determinations about the offender’s proposed release plan. It says nothing about the criteria for granting the request, let alone detailing circumstances under which the DOC must do so.
The majority overcomes the legislature’s failure to specify any criteria for granting a request by holding that the determinations mentioned in section 9.94A.728(2)(d) are the only conditions on which the DOC may deny transfer, and therefore requiring that it grant in all other cases. Maj. Op. at 666-67. One searches the statute in vain, however, for any indication that those determinations are the exclusive reasons that the DOC “may deny” transfer. The criteria of section 9.94A.728(2)(d) are sufficient to deny sex offenders transfer, but are not necessary. Had the legislature wished to make them necessary, it would have used not “if’ but “only if,” or some semantic equivalent.[1]
In some cases, a court may read the word “if’ to mean “only if.” The canon of construction expressio unius est exclusio alterius stands for the proposition that, when the legislature provides a list of related items, it impliedly means to exclude other items. See Norman J. Singer, 2A Sutherland Statutes and Statutory Construction § 47:23 (7th Ed.2007). Such a result obtains, however, only where there is some reason to believe that the legislature intended that the enumeration be exclusive — or at the very least in the absence of evidence to the contrary. “The maxim expressio unius est exclusio alterius is an aid to construction, not a rule of law. It can never override clear and contrary evidences of [legislative] intent.” Neuberger v. Comm’r, 311 U.S. 83, 88, 61 S.Ct. 97, 85 L.Ed. 58 (1940); see also Wash. State Labor Council v. Reed, 149 Wash.2d 48, 65 P.3d 1203, 1209 (2003) (“[T]he rule of ex-pressio unius est exclusio alterius d[oes] not necessarily apply without considering other factors which may persuade the court that legislative intent was the opposite of what the statutory construction rule would require.”). In this case, however, the majority uses the technique sub siten-, tio to override the unambiguously discretionary language in the statute (“may”).
The language of Wash. Rev.Code section 9.94A.728(2)(d) makes it clear that the provision’s purpose is to expand the discretion of the DOC. This makes the majority’s implicit expressio unius reading especially inappropriate. The statute states: “The department’s authority under this section is independent of any court-ordered condition of sentence or statutory provision regarding conditions for community custody *672 or community placement.” Wash. Rev. Code § 9.94A.728(2)(d). That language makes the function of section 9.94A.728(2)(d) apparent: to preserve to the DOC the discretion to deny transfer in the event that it makes one of the four determinations, notwithstanding what other legal sources might otherwise require. The majority’s reading of the statute, however, turns that meaning on its head, transmuting a non obstante provision written to preserve or expand discretion into one with the effect of limiting it.
II.
I might still concur with this misreading of section 9.94A.728(2)(d), however, if the Washington State courts had similarly misread the statute. See Bergen v. Spauld-ing, 881 F.2d 719, 721 (9th Cir.1989) (“Whether a state statute provides such a protectable entitlement depends on the structure and language of the statute, as well as the state courts’ interpretation of the scope of the interest. ”) (emphasis added). But, notwithstanding the majority’s characterization of state precedent, they have not.
The majority quotes language from Washington intermediate appellate courts recognizing a “limited liberty interest” in early release. Maj. Op. at 667 (quoting In re Liptrap, 127 Wash.App. 463, 111 P.3d 1227, 1231 (2005); In re Dutcher, 114 Wash.App. 755, 60 P.3d 635, 636 (2002); In re Crowder, 97 Wash.App. 598, 985 P.2d 944, 944-45 (1999)). What the majority omits is the nature of that state “liberty interest.” In both Liptrap and Dutcher, the Washington court’s holding concerned only the inmate’s procedural right to have his proposal considered on the merits, rather than a substantive right to transfer[2] Liptrap, 111 P.3d at 1234; Dutcher, 60 P.3d at 638. This was based, in large part, on the only truly mandatory language found in section 9.94A.728(2), mandating that the DOC “shall ... require the offender to propose a release plan.” Wash. Rev.Code § 9.94A.728(2)(c); see Dutcher, 60 P.3d at 638. Unfortunately, “expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause” of the Fourteenth Amendment. Olim v. Wakinekona, 461 U.S. 238, 250-51 n. 12, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); see also In re Cashaw, 123 Wash.2d 138, 866 P.2d 8, 12 (1994) (“The United States Supreme Court and the Ninth Circuit have clearly held that procedural laws do not create liberty interests; only substantive laws can create these interests.”). Washington State law permits prisoners to challenge DOC violations of parole procedures, but it grounds this right to process in state law, not in the federal constitution.[3] While the DOC has, *673 therefore, no “discretion to decide whether or when to consider an offender for transfer to community custody,” Liptrap, 111 P.3d at 1232 (emphasis added), Washington’s courts have given no indication that its discretion is substantially limited in how it makes that consideration.
None of the cases cited by the majority implies that the criteria in section 9.94A.728(2)(d) are the exclusive reasons that the DOC may deny transfer to community custody. Liptrap notes that the statute “stat[es] reasons why the department may deny a release plan,” 111 P.3d at 1232, but those “reasons” are kept in the indefinite: they are just “reasons”— not the reasons, let alone the only reasons — for denial. Similarly, Dutcher held that “the statute ... requires DOC to base its community custody eligibility decisions on the merits of the release plan,” 60 P.3d at 638, but does not imply that section 9.94A.728(2)(d) provides the sole rubric by which those “merits” are to be evaluated.
Washington courts have implied only one limit on the substance of the DOC’s exercise of discretion: its reasons for denial must be “legitimate.” Id. But contrary to the majority’s assertions, there is no indication that a reason may acquire “legitimacy” only by its enumeration in section 9.94A.728(2)(d). Indeed, there is every indication to the contrary: it was Crowder, a decision predating the enactment of section 9.94A.728(2)(d) by three years, that first mentioned “legitimate reasons” for denial of community custody. 985 P.2d at 946. Moreover, Crowder specified the petitioner’s “own withdrawal of a suggested placement plan” as among the “legitimate reasons” for denying him transfer, id. — a reason which certainly seems legitimate, but appears nowhere in section 9.94A.728(2)(d). Neither Dutcher nor Lip-trap hint that subsequent codification of certain legitimate reasons has somehow narrowed the range of legitimacy, and no Washington case has provided a general definition for what makes a reason “legitimate,” which could be as broad as “any reason not otherwise proscribed by law.” [4] This ill-defined “right” to transfer only in the absence of some “legitimate” reason to deny is hardly sufficient to produce the “legitimate expectation of release” required of a protected liberty interest under Greenholtz v. Inmates of the Nebraska Penal and Gorr. Complex, 442 U.S. 1, 12, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). *674 Washington case law, in short, provides no reason for us to disregard the text and manifest purpose of section 9.94A.728(2).
* * *
For the reasons set forth above, I would join the two district courts and two panels of this court, see Maj. Op. at 668 n. 14, that have all held that section 9.94A.728(2) does not create a liberty interest protected by the Due Process clause of the Fourteenth Amendment. I would therefore not reach the issue of whether the “right” announced today was “clearly established.”

. It is true that there are no magic words necessary for the legislature to create a liberty interest. Bd. of Pardons v. Allen, 482 U.S. 369, 378, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987). There are any number of other ways the legislature might have accomplished the result the majority reads into section 9.94A.728(2)(d). It might have said the DOC "shall” grant release "unless” the criteria are met or "if” they are not; it might have said that it "may” deny release "only if” the criteria are met, or "except in the event” they are not; it might have come up with another formulation that means substantially the same thing.
The distinction between "if” and "only if,” however, is not a mere quibble over vocabulary-it goes right to the heart of whether the criteria of section 9.94A.728(2)(d) are necessary or sufficient conditions for transfer, and therefore whether transfer is mandatory or entirely discretionary. “May ... only if” would be effectively identical to "shall ... unless”; "may ... if” is not. Contra Maj. Op. at 666-67. In formal terms, the majority commits the fallacy of denying the antecedent: from the premise "if P, then Q,” it does not follow from "not P” that "not Q.” See generally Ruggero J. Aldisert, Logic for Lawyers 160-61 (3d ed.1997); Bruce N. Waller, Critical Thinking 112-13 (5th ed.2005); Wikipedia, Denying the antecedent, available at http://en.wikipedia.org/wiki/Denying_the_ antecedent (Last accessed May 30, 2008).

. Crowder, decided in 1999, predated the 2002 enactment of the statute supposedly creating the liberty interest at issue in this case. Liptrap, 111 P.3d at 1232 & n. 3.

. See Cashaw, 123 Wash.2d 138, 866 P.2d 8, 13 (1994) ("The Court of Appeals was correct in concluding the Board had violated its own procedural rules for parolability hearings.... Where the Court of Appeals erred was in taking the additional step of concluding this violation was of constitutional magnitude.”). Cashaw instead held that the inmate's right to challenge his restraint because of procedural error is grounded in Washington Rule of Appellate Procedure 16.4. Id. at 13-14. Notwithstanding the holding of Cashaw, Dutcher refers to an inmate’s "protected liberty interest” in "the department’s compliance with requirements of statute affecting his release,” citing Cashaw itself for the proposition. 60 P.3d at 636 & n. 3 (citing Cashaw, 866 P.2d at 11).
As the majority notes, Dutcher "recognizes a liberty interest in both the substantive right to early release ... and the distinct procedural right to have the DOC comply with the requirements of the statutes governing such release.” Maj. Op. at 667-68 n. 13 (emphasis added). Because Dutcher s holding concerns *673 only the latter, procedural right, its description of the former can only be described as dicta. As with much dicta, it risks imprecision, using the same term, "liberty interest,” to refer both to the substantive interest in transfer, which could conceivably be a Fourteenth Amendment "liberty interest,” and the procedural right to compliance with regulation, which cannot. If a chef announces that the dessert will consist of "fruit,” but in the very next breath lists "herring” and "quartz” as other kinds of “fruit,” one might be forgiven in beginning to doubt that the dish’s ingredients have necessarily been plucked off a tree.
Notwithstanding its use of traditional Due Process Clause terminology and concepts, therefore, the only charitable reading of Dutcher, not squarely foreclosed by both United States and Washington State Supreme Court precedent, is that the Washington Court of Appeals is using "liberty interest” far more broadly than the term of art of federal Due Process jurisprudence that the majority contemplates, encompassing any right cognizable at law with some bearing on whether one receives liberty. No other reading is possible in light of precedent that has held that a right to process is no more a Fourteenth Amendment "liberty interest” than a herring is a fruit. Olim, 461 U.S. at 250-51 n. 12, 103 S.Ct. 1741; Cashaw, 866 P.2d at 12.

. Under such a reading, the DOC, for example, could not deny transfer to someone on account of his race or religion. Such a condition may limit the DOC's discretion, but scarcely enough to give rise to any “expectation” of transfer.