189 P.3d 240 (2008)
STATE of Washington, Respondent,
v.
Cecil DUDGEON, Appellant.
No. 36273-2-II.
Court of Appeals of Washington, Division 2.
July 29, 2008.
*241 Catherine E. Glinski, Attorney at Law, Manchester, WA, for Appellant.
Joshua Choate, Office of the Washington State Attorney, Seattle, WA, for Respondent.

OPINION PUBLISHED IN PART
PENOYAR, J.
¶ 1 Cecil Dudgeon appeals a jury's finding that he is a sexually violent predator (SVP). He argues that (1) the State should have had to prove a recent overt act in his case because of his alleged unlawful incarceration; (2) the State's expert witness was improperly allowed to testify regarding the veracity of the alleged victims; and (3) the State presented insufficient evidence for the jury to find, beyond a reasonable doubt, that Dudgeon is a SVP. We affirm.

FACTS

I. PROCEDURAL FACTS LEADING UP TO CIVIL COMMITMENT TRIAL
¶ 2 In 2001, Dudgeon was convicted of indecent liberties by forcible compulsion and sentenced to 68 months' confinement. The Department of Corrections (DOC) assigned Dudgeon an earned early release date of May 23, 2005. Per DOC policy, sex offenders can only be released after DOC has investigated and approved a release plan, indicating where the offender will live. Dudgeon submitted his release plan on March 10, 2005.
¶ 3 Before Dudgeon submitted his release plan, on February 15, 2005, the End of Sentence Review Committee (ESRC) referred Dudgeon to the ESRC SVP Subcommittee for civil commitment consideration under chapter 71.09 RCW. On March 31, 2005, the ESRC SVP subcommittee determined that a Forensic Psychological Evaluation (FPE) should be requested to determine if Dudgeon met criteria as a SVP.
¶ 4 Meanwhile, a community custody officer (CCO) investigated Dudgeon's release plan. The CCO was required, in addition to other tasks, to visit the proposed residence, assess the degree of risk for victims and potential victims of similar age or circumstance, and visit the neighborhood around the proposed residence to determine if schools or daycare centers are present. DOC Policy 350.200. On April 12, 2005, the investigating CCO approved Dudgeon's release plan.
¶ 5 Dudgeon's approval came to the attention of Kimberly Acker, the DOC ESRC/SVP Civil Commitment Program Manager, on April 15, 2005. Acker determined that approval of Dudgeon's plan was inappropriate and premature for two reasons. First, approval of Dudgeon's plan was inappropriate under the "Dutcher Directive" amending *242 DOC Policy 350.200.[1] At that time, DOC interpreted the Dutcher Directive to require that a proposed release plan for a sex offender under consideration for civil commitment as a SVP could be neither approved or denied until the assigned CCO (1) reviewed the ESRC file materials, including all psychology, psychiatric, and forensic psychological reports, and (2) requested and reviewed the completed FPE report recommended by the ESRC. When the investigating CCO initially approved Dudgeon's plan on April 12, 2005, Dudgeon was also under consideration for SVP civil commitment procedures, and his FPE, requested by the ESRC, had not been completed by a doctor or reviewed by the CCO.
¶ 6 Second, Acker noticed that the CCO's investigation suffered from other shortcomings. DOC Policy 350.200 requires the investigating CCO to enter all actions taken during an investigation into a central database, so that a written "chronological record" is created, 3 Report of Proceedings (RP) at 78. Acker noted that the investigating CCO entered "no chronological record [ ] at all" of his investigation into Dudgeon's release plan.[2] 3 RP at 84-85.
¶ 7 Based on these two factors, Acker formally withdrew approval of Dudgeon's release plan. Acker resubmitted the release plan the same day to allow the CCO to request and review appropriate file materials and to fully reconsider the release plan in light of the risk Dudgeon posed to the community. DOC assigned a new investigating CCO to review Dudgeon's plan.
¶ 8 On May 16, 2005, Division One of this court, announced its decision in In re Personal Restraint of Liptrap, 127 Wash.App. 463, 111 P.3d 1227 (2005). In Liptrap, the court held that the DOC's Dutcher Directive created an "unauthorized exemption from [DOC's] obligation to timely review proposed [release] plans on their merits." Liptrap, 127 Wash. App. at 473, 111 P.3d 1227. The Liptrap court held that "delay in deciding whether a particular inmate qualifies for a civil commitment referral does not justify delay in consideration of the inmate's release plan if he has become eligible for transfer into community custody." Liptrap, 127 Wash.App. at 474, 111 P.3d 1227. The court found that DOC "must act on proposed release plans in a timely manner, so as to ensure the inmate has a genuine opportunity to benefit from the earned early release credits." Liptrap, 127 Wash.App. at 476, 111 P.3d 1227.
¶ 9 After the court's Liptrap decision, DOC prepared a list of offenders, including Dudgeon, affected by the decision. DOC reviewed the progress of these offender's release plans to ensure that their "[plans were] proceeding" and that the investigating CCOs "followed through and completed their investigation[s]." 3 RP at 87.
¶ 10 The investigating CCO continued to investigate Dudgeon's release plan.[3] On May 20, 2005, Acker assigned Dr. Amy Phenix, a forensic psychologist, to prepare Dudgeon's FPE. Dudgeon's CCO did not wait for Dr. Phenix to complete her evaluation before recommending approval of Dudgeon's release plan. DOC approved Dudgeon's release plan *243 on June 1, 2005, roughly 12 days after Division One's decision in Liptrap.
¶ 11 On June 2, 2005, DOC began notifying local law enforcement of Dudgeon's pending release. Per RCW 9.94A.612, DOC must notify law enforcement and the offender's victims of his release no less than 30 days before the release. DOC policy 350.600 (Teletype Notification Policy) extends this window so that notice must be given no less than 35 days from the offender's release date. Dudgeon was set to be released on July 7, 2005, 35 days from when DOC notified law enforcement.
¶ 12 Dr. Phenix completed Dudgeon's FPE and forwarded it to the ERSC on June 24, 2005. Dr. Phenix determined that Dudgeon met the SVP criteria. Acker notified the Washington State Attorney General's Office of Dr. Phenix's evaluation, and the State initiated SVP civil commitment proceedings on July 6, 2005. Dudgeon was not released on July 7, 2005, due to the pending civil proceedings.

II. SVP CIVIL COMMITMENT TRIAL
¶ 13 After the court found probable cause to believe that Dudgeon was a SVP, and after several continuances, the SVP court scheduled Dudgeon's commitment trial for February 26, 2006. During pretrial, Dudgeon filed a motion to require the State to prove a recent, overt act. Since the State filed the SVP petition while Dudgeon was in custody, it argued it was not required to plead or prove a "recent overt act." RCW 71.09.030(5). Dudgeon argued that because his detention past his original early release date was unlawful, and but for the unlawful detention he would have been released to the community, that the State should be required to prove a recent overt act, as though he had been released to the community. The SVP court found Dudgeon's detention lawful, and it allowed the State to proceed without proving a recent overt act.[4] Dudgeon sought discretionary review from this court, which we denied on April 12, 2007.
¶ 14 At the SVP proceeding, the State presented testimony from six of Dudgeon's alleged victims, parents of two victims, Dr. Phenix, and Dudgeon. Dudgeon presented evidence from two of his biological daughters and a former DOC employee who explained Dudgeon's conditions of probation should the jury find he is not a SVP. On May 3, 2007, the jury found Dudgeon to be a SVP, and the court committed him to the McNeil Island Special Commitment Center. Dudgeon is still in confinement. He appeals.

ANALYSIS

I. RECENT OVERT ACT NOT REQUIRED
¶ 15 When the State files a SVP petition against an offender living in the community, the State must prove a "recent overt act" showing that the offender is currently dangerous. RCW 71.09.060(1). A "recent overt act" is "any act or threat that has either caused harm of a sexually violent nature or creates a reasonable apprehension of such harm in the mind of an objective person who knows of the history and mental condition of the person engaging in the act." RCW 71.09.020(10).
¶ 16 Dudgeon argued to the SVP court that his detention past his original early release date was unlawful and, had he been released as planned, the State would have had to make the additional showing of a recent overt act. The State argued that (1) the SVP court was not vested with jurisdiction to hear Dudgeon's unlawful detention complaint and (2) if the SVP court did have jurisdiction, then it should rule that Dudgeon was not unlawfully detained. The SVP court held that Dudgeon was not unlawfully detained and that the State was not required to make the additional showing. We affirm the SVP court's ruling.

A. SVP Court's Jurisdiction to Determine Lawfulness of Incarceration
¶ 17 Initially, the State claims on appeal that the SVP court was without proper jurisdiction to consider the issue of Dudgeon's *244 alleged unlawful detainment. Since Dudgeon appeared before the court for a civil commitment proceeding brought under chapter 71.09 RCW, and not for the underlying criminal conviction, the State asserts that the only issues the trial court was permitted to consider were those directly pertaining to whether Dudgeon was a SVP. The SVP court took jurisdiction over Dudgeon's alleged unlawful detainment. We review questions of law de novo. Sunnyside Valley Irrigation Dist. v. Dickie, 149 Wash.2d 873, 880, 73 P.3d 369 (2003). There are no Washington cases on point to answer this question. That said, one recent case is instructive. We hold that the SVP court did not have jurisdiction to determine the lawfulness of Dudgeon's detention.
¶ 18 In a recent decision from Division Three of this court, In re Detention of Keeney, they found that a SVP court's jurisdiction was limited to determining the SVP civil commitment action only. 141 Wash. App. 318, 169 P.3d 852 (2007). Keeney claimed that he had been unlawfully imprisoned for 23 months (on a previous conviction) and that the SVP court should dismiss the State's SVP commitment petition because of that unlawful imprisonment. Keeney, 141 Wash.App. at 322, 169 P.3d 852. The SVP court declined to do so, as did the court of appeals. Instead, the court of appeals held that "lawful custody" was not a prerequisite to a valid petition for SVP civil commitment. Keeney, 141 Wash.App. at 331, 169 P.3d 852. The SVP statute merely requires that an individual be in "custody" at the time of the commitment hearing. See RCW 71.09.030,.040; Keeney, 141 Wash.App. at 330, 169 P.3d 852. An individual is not precluded from pursuing remedies for an unlawful detention, but "the question of the lawfulness of an individual's detention is a separate question, involving separate proceedings, and is not included in the inquiry as to whether an individual meets the criteria for civil commitment as [a] SVP." Keeney, 141 Wash.App. at 331, 169 P.3d 852.
¶ 19 The facts of Keeney differ slightly from the case at bar. In Keeney, the defendant argued that the unlawfulness of his detention stripped the trial court of jurisdiction to hear his subsequent SVP commitment hearing. Keeney, 141 Wash.App. at 328, 169 P.3d 852. The Keeney court determined that the lawfulness of Keeney's detention was not an issue for the SVP court to decide so long as he was "in custody" when the petition was filed. Keeney, 141 Wash.App. at 330-31, 169 P.3d 852. In this case, Dudgeon asked the SVP court to ascertain whether he was lawfully in custody when the State filed the SVP petition, for the purpose of requiring the State to prove a recent, overt act. Though different in nature, both cases ask the SVP court to undertake a similar unlawful detention analysis.
¶ 20 The lawfulness of detention is not mentioned in chapter 71.09 RCW and is "not included in the inquiry as to whether an individual meets the criteria for civil commitment as [a] SVP." Keeney, 141 Wash.App. at 331, 169 P.3d 852. The logic of Keeney also applies here. Dudgeon argues that DOC violated his due process rights because they did not release him on his earliest release date, but he provides no support for the proposition that the SVP court should address such issues under chapter 71.09 RCW. The SVP court is required, for the purposes of determining whether the State must prove a recent overt act, to review whether the individual was "incarcerated for a sexually violent offense, RCW 71.09.020[(15)], or for an act that would itself qualify as a recent overt act, RCW 71.09.020[(10)]" when the SVP petition was filed. In re Det. of Marshall, 156 Wash.2d 150, 157, 125 P.3d 111 (2005) (quoting In re Det. Of Henrickson, 140 Wash.2d 686, 695, 2 P.3d 473 (2000)). In reviewing the statutory scheme of chapter 71.09 RCW, and the alternatives available to an inmate to challenge unlawful incarceration, it is clear that the SVP court is not the proper venue to challenge whether the alleged SVP's incarceration was lawful. The SVP court simply determines whether the alleged SVP was incarcerated and whether the incarceration was for a sexually violent offense. Dudgeon should have first exhausted all internal DOC processes to protest his alleged unlawful confinement and then, once internal remedies were exhausted, filed a *245 habeas corpus petition or a personal restraint petition.

B. Because Dudgeon Was In Custody, No Recent Overt Act Required
¶ 21 We affirm the SVP court's ruling that because Dudgeon was in custody when the SVP petition was filed, the State did not need to prove a recent overt act. As noted in In re Personal Restraint of Young, 122 Wash.2d 1, 41, 857 P.2d 989 (1993), "where the individual is currently incarcerated no evidence of a recent overt act is required." Further, as noted in the previous section, the State is excused from proving a recent overt act when the individual is "incarcerated for a sexually violent offense, RCW 71.09.020(15), or for an act that would itself qualify as a recent overt act, RCW 71.09.020(10)" when the SVP petition is filed. Marshall, 156 Wash.2d at 157, 125 P.3d 111 (quoting Henrickson, 140 Wash.2d at 695, 2 P.3d 473).
¶ 22 In re Detention of Albrecht, 147 Wash.2d 1, 9, 51 P.3d 73 (2002), notes that "[t]he purpose of relieving the State of the burden of proving a recent overt act, when the offender has been continuously incarcerated since conviction, is that such a requirement would create an impossible burden for the State to meet." Due process, "does not require that the absurd be done before a compelling state interest can be vindicated." Young, 122 Wash.2d at 41, 857 P.2d 989 (quoting People v. Martin, 107 Cal.App.3d 714, 725, 165 Cal.Rptr. 773 (1980)). Had DOC released Dudgeon, for any reason, the State would be required to prove a recent overt act under chapter 71.09 RCW, as the State's burden would no longer be "impossible." Albrecht, 147 Wash.2d at 10, 51 P.3d 73.
¶ 23 The facts show that Dudgeon was in custody since his 2001 conviction. Under chapter 71.09 RCW language, since he was in custody, and had not been released for any reason, the State was not required to prove a recent, overt act. Thus, we affirm the SVP court's ruling permitting the State to proceed with its case without proving a recent overt act.
¶ 24 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
We concur: VAN DEREN, C.J., and HUNT, J.
NOTES
[1] DOC created the "Dutcher Directive" in response to In re Personal Restraint of Dutcher, 114 Wash.App. 755, 60 P.3d 635 (2002).
[2] Acker testified:

There was no indication that any visit had been made, that any contact had been made with the proposed sponsor, that any victim or potential victim risk assessment had been conducted, that they had even gone to the residence or area surrounding the residence to look and assess proximity to schools, daycares, as required by law, or even location of nearby. victims. There was no indication that any of that had been completed.
3 RP at 85.
[3] DOC records indicate, and Dudgeon concedes, that on May 23, 2005, during the investigation of Dudgeon's release plan, he informed Correctional Counselor Cindy Tully that he did not want to be released from the institution as a Level III sex offender and that he wanted to know if he could cancel investigation of his release plan until he could get the level "removed." Clerk's Papers (CP) at 223. On May 31, 2005, Acker spoke with Dudgeon's lawyer. She informed him that Dudgeon stated that he was interested in removing his release plan from consideration so that he could appeal his conviction and/or established Risk Level Certification. Acker told Dudgeon's attorney that investigation of his plan was continuing as planned, despite Dudgeon's comments.
[4] The SVP court entered written findings of fact and conclusions of law. Dudgeon does not specifically assign error to these findings and conclusions; instead he assigns error to the SVP court's decision to permit the State to proceed without pleading and proving a recent overt act.