172 P.3d 719 (2007)
In the Matter of the Personal Restraint Petition of Mark MATTSON, Petitioner.
No. 58823-1-I.
Court of Appeals of Washington, Division 1.
December 17, 2007.
Gregory Link, Washington Appellate Project, Seattle, WA, for Petitioner.
Alex A. Kostin, Criminal Justice Division, Olympia, WA, for Respondent.
SCHINDLER, A.C.J.
¶ 1 Under RCW 9.94A.728, in lieu of earned early release time, a sex offender may become eligible to transfer to community custody if the Washington State Department of Corrections (DOC) approves the offender's proposed release plan and residence. Mark Mattson challenges the DOC policies that categorically prevent approval of a proposed release plan if a forensic evaluation concludes the offender meets the criteria for civil commitment as a sexually violent predator. As in In re Pers. Restraint of Dutcher, 114 Wash.App. 755, 60 P.3d 635 (2002), and In re Pers. Restraint of Liptrap, 127 Wash. *720 App. 463, 111 P.3d 1227 (2005), we hold that the statute governing transfer to community custody in lieu of earned early release does not allow DOC to categorically exclude offenders who meet the sexually violent predator criteria. We grant Mattson's personal restraint petition and direct DOC to evaluate his most recently proposed release plan and residence on its merits.
¶ 2 A jury convicted Mark Mattson of the crime of indecent liberties by forcible compulsion, committed on November 2, 1998. In 2003, the court imposed a 120 month sentence, followed by 36 months of community custody.[1] Mattson's maximum release date was November 2, 2008. With time for good behavior, Mattson was eligible to transfer into community custody on July 23, 2005.
¶ 3 Under DOC policy 350.200, "Risk Based Transition for Offenders," in order to transfer to community custody, an inmate must submit a proposed release plan and a proposed residence that complies with the conditions of the judgment and sentence and does not place the inmate at risk to reoffend, or present a risk to victim safety or to community safety. To qualify for transfer to community custody, DOC must approve the proposed release plan and residence.
¶ 4 The June 25, 2002 version of policy 350.200 sets forth a number of factors DOC takes into account in determining the appropriateness of a transition plan, including "the offender's risk, past compliance with supervision requirements, all chrono entries, and End of Sentence Review Committee decisions."[2] Section VI of the policy also unequivocally states that "[s]taff shall not complete or forward a TP [transition plan] for investigation if: [t]he ESRC has determined that the offender meets the criteria for referral as a sexually violent predator under RCW 71.09."
¶ 5 In 2003, the DOC End of Sentence Review Committee (ESRC) classified Mattson as a level 3 high-risk sex offender. In November 2003, the Joint Forensic Unit of the ESRC referred Mattson to Brian W. Judd, Ph.D. to conduct a psychological evaluation to determine whether Mattson met the criteria for civil commitment as a sexually violent predator under chapter 71.09, RCW. Based on review of Mattson's criminal history and his incarceration history, Dr. Judd issued a preliminary report concluding that Mattson meets the criteria as a sexually violent predator.[3]
¶ 6 In 2004, Mattson enrolled in the Twin Rivers sex offender treatment program at Monroe. In April of 2005, Mattson submitted his first proposed release plan and a proposed residence at the Franklin Apartments in Seattle. DOC investigated and rejected the Franklin Apartments because it was in a high drug and prostitution area. In June of 2005, Mattson completed the in-custody portion of the sex offender treatment program with the expectation of continuing treatment while on community custody. After completing the sex offender program, Mattson submitted another release plan with the Georgia Inn in Seattle as his proposed residence. DOC investigated and rejected the Georgia Inn because it was in "the middle of [sic] a very well known prostitution area." In August 2005, Mattson proposed living at the Boylston Hotel in Seattle. According to the DOC records, because the investigating officer witnessed drug transactions and prostitution near the hotel, DOC rejected the Boylston Hotel as a proposed residence release plan.
¶ 7 In early August 2005, Dr. Judd issued an addendum to his 2003 preliminary evaluation of Mattson. Based on review of additional information, including Mattson's treatment records from the Twin Rivers sex offender treatment program and a four-hour *721 interview with Mattson, Dr. Judd confirmed that in his opinion Mattson meets the criteria as a sexually violent predator.
¶ 8 In September of 2005, Mattson proposed living in a private home in Duvall. But because the investigating officer stated that the man's wife was unaware of her husband's proposal and was unwilling to allow Mattson to live with them, DOC rejected the plan. On April 19, 2006, Mattson submitted the Mack House in Arlington as his proposed residential address. The Mack House is a clean and sober residence that accepts sex offenders. The record indicates that the Mack House agreed to accept Mattson as a resident and participant in its program.
¶ 9 On June 8, 2006, DOC issued a directive replacing Section VI of DOC Policy 350.200. "Effective immediately: this Directive replaces DOC Policy 350.200  Risk Based Transition for Offenders, page 8, section D, number 4."
¶ 10 The June 2006 directive provides in pertinent part:
For those cases where a forensic evaluation has been completed and an expert has concluded that the offender does meet the criteria for civil commitment as defined under RCW 71.09.020, no proposed community plan will be deemed sufficiently safe to ensure community protection.
¶ 11 While DOC never formally denied Mattson's proposed residence at Mack House, the June 2006 records stated that "[a]fter reviewing the latest re sex offender directives looks like this will be denied based on that and where `no plan will offer sufficient, protection for the community'. . . . Have verified P meets criteria for SVP referral. . . ."
¶ 12 Mattson filed a personal restraint petition challenging denial of his proposed release plan and residence based on the DOC policies that prevent approval after a forensic evaluation concluded he meets the criteria as a sexually violent predator.
¶ 13 Where an inmate challenges a decision from which he has had "no previous or alternative avenue for obtaining state judicial review," RAP 16.4(a) requires showing that he is unlawfully restrained. In re Pers. Restraint of Cashaw, 123 Wash.2d 138, 148-49, 866 P.2d 8 (1994). A restraint is unlawful if the challenged action is unconstitutional or violates the laws of the State of Washington. RAP 16.4(c)(2); Liptrap, 127 Wash.App. at 469, 111 P.3d 1227; Dutcher, 114 Wash.App. at 758, 60 P.3d 635.[4] An inmate has a limited, but protected liberty interest in earned early release. Id. "Likewise, the department's compliance with requirements of a statute affecting his release is a protected liberty interest." Dutcher, 114 Wash.App. at 758, 60 P.3d 635.
¶ 14 In his personal restraint petition, the earned release time statute, Mattson contends he is unlawfully restrained and entitled to relief. He asserts the DOC policy that categorically prohibits approval of any proposed release plan if a forensic evaluation concludes the offender meets the criteria as a sexually violent predator, conflicts with the earned release time statute, RCW 9.94A.728, and this court's decisions in Dutcher and Liptrap.
¶ 15 The meaning of a statute is a question of law that we review de novo. The primary objective in construing a statute is to give effect to legislative intent. In re Pers. Restraint of Smith, 139 Wash.2d 199, 203-04, 986 P.2d 131 (1999); State v. Breazeale, 144 Wash.2d 829, 837, 31 P.3d 1155 (2001). If the statute's meaning is plain on its face, we must give effect to the plain meaning as an expression of legislative intent. Breazeale, 144 Wash.2d at 840, 31 P.3d 1155.
¶ 16 RCW 9.94A.728 (1) allows an inmate to earn early release time for good behavior.
No person serving a sentence imposed pursuant to this chapter and committed to the custody of the department shall leave the confines of the correctional facility or *722 be released prior to the expiration of the sentence except as follows:
(1) Except as otherwise provided for in subsection (2) of this section, the term of the sentence of an offender committed to a correctional facility operated by the department may be reduced by earned release time in accordance with procedures that shall be developed and promulgated by the correctional agency having jurisdiction in which the offender is confined. The earned release time shall be for good behavior and good performance, as determined by the correctional agency having jurisdiction. The correctional agency shall not credit the offender with earned release credits in advance of the offender actually earning the credits. Any program established pursuant to this section shall allow an offender to earn early release credits for presentence incarceration. If an offender is transferred from a county jail to the department, the administrator of a county jail facility shall certify to the department the amount of time spent in custody at the facility and the amount of earned release time.
¶ 17 But an inmate convicted of a sex offense who earns credit for good behavior is not entitled to early release. Instead, the inmate "may become eligible . . . for transfer to community custody status in lieu of earned release time pursuant to subsection (1) of this section." RCW 9.94A.728(2)(a). In the statute, the legislature directs DOC to establish a program that allows for the possibility of early release for sex offenders to community custody and that requires a proposed release plan and approved residential address and living arrangement. The statute allows DOC to deny transfer to community custody status if the proposed release plan or residence places the offender at risk to reoffend or presents a risk to victim or community safety. RCW 9.94A.728(2) provides in pertinent part:
. . . .
(2)(a) A person convicted of a sex offense . . . may become eligible, in accordance with a program developed by the department, for transfer to community custody status in lieu of earned release time pursuant to subsection (1) of this section;
. . . .
(c) The department shall, as a part of its program for release to the community in lieu of earned release, require the offender to propose a release plan that includes an approved residence and living arrangement. All offenders with community placement or community custody terms eligible for release to community custody status in lieu of earned release shall provide an approved residence and living arrangement prior to release to the community;
(d) The department may deny transfer to community custody status in lieu of earned release time pursuant to subsection (1) of this section if the department determines an offender's release plan, including proposed residence location and living arrangements, may violate the conditions of the sentence or conditions of supervision, place the offender at risk to violate the conditions of the sentence, place the offender at risk to reoffend, or present a risk to victim safety or community safety. . . .
¶ 18 In Dutcher, DOC refused to accept an offender's proposed release plan because the ESRC decided to refer the inmate for civil commitment as a sexually violent predator. Dutcher, 114 Wash.App. at 760, 60 P.3d 635. According to the DOC policy in effect at the time, the staff would not investigate or approve release plans for inmates referred for civil commitment. Dutcher, 114 Wash.App. at 759-60, 60 P.3d 635. We held that the DOC policy violated the plain language of the earned early release statute and that DOC had no authority to adopt a policy that categorically prevents staff from approving a proposed release plan. Dutcher, 114 Wash. App. at 762, 60 P.3d 635. In deciding that the DOC policy was contrary to the language in the statute that allows sex offenders to become eligible for transfer to community custody, we rejected DOC's argument that it was authorized to categorically exclude offenders who had been referred for civil commitment.
The legislature has required the department to make its early release decisions based upon plans proposed by inmates and *723 reviewed by the department, and has (we believe wisely) not authorized any exemption from this process simply because End of Sentence Review Committee believes the offender qualifies for a civil commitment hearing. Amended DOC Policy 350.200 therefore violates the governing statutes.
Dutcher, 114 Wash.App. at 765-766, 60 P.3d 635. We also concluded in Dutcher that the DOC policy was "at odds" with the purpose of the earned early release statute and public safety because preventing the possibility of earned early release left little incentive to participate in treatment or comply with prison rules. Dutcher, 114 Wash.App. at 764, 60 P.3d 635. And because "for two-thirds of those referred by ESRC, no civil commitment proceedings are even initiated,"[5] a significant number of sex offenders would end up facing release with "no release plans whatsoever" even though "[t]hese are among the offenders most likely to reoffend." Dutcher, 114 Wash.App. at 765, 60 P.3d 635.
¶ 19 Following our decision in Dutcher, DOC allowed inmates to submit a release plan but adopted a new policy instructing staff to not approve or deny a proposed release plan until a forensic psychological evaluation was completed to determine whether the sex offender meet the criteria for referral to civil commitment. Liptrap, 127 Wash.App. at 468, 111 P.3d 1227. Several inmates filed personal restraint petitions challenging the DOC policy as "another unauthorized exemption from its obligation to timely review proposed plans on the merits." Id. at 473, 111 P.3d 1227. In Liptrap, we held that the amended DOC policy violated the earned early release statute, and that DOC could not delay and must timely act on an inmate's proposed release plan. Liptrap, 127 Wash.App. at 466, 111 P.3d 1227.
The legislature has not authorized the department to delay consideration of release plans while awaiting a forensic evaluation. The department's obligation to take action on an eligible prisoner's plan to transfer to community custody is independent of the decision to refer for civil commitment. We conclude the petitioners have shown an unlawful restraint.
While recognizing that DOC has the right to obtain a forensic evaluation, and to take into account and consider the risks as documented in an evaluation, nonetheless, we concluded that "if there is to be extended confinement for sex offenders based on their risk of reoffense, it must be accomplished within the constraints of due process, such as the initiation of a civil commitment proceeding." Liptrap, 127 Wash.App. at 474, 111 P.3d 1227.
¶ 20 Here, the fact that a forensic evaluation concludes that an offender meets the criteria for civil commitment does not change the obligation under the statute to consider a proposed release plan on its merits. As in Dutcher and Liptrap, we conclude the DOC policies that preclude approval of any release plan if a forensic evaluation determines the inmate meets the criteria for a sexually violent predator conflicts with the statute governing eligibility of a sex offender to transfer to community custody in lieu of earned early release.
¶ 21 We reject DOC's argument that the policy is consistent with Dutcher and Liptrap. We agree that DOC complies with Dutcher and Liptrap by allowing an inmate who meets the sexually violent predator criteria to submit a proposed release plan and by timely investigating a proposed plan and residential address. But the policy violates the plain language of the statute. The policy categorically prevents approval of a release plan if a forensic evaluation determines that an inmate meets the criteria of a sexually violent predator because "no proposed community release plan will be deemed sufficiently safe to ensure community protection."
¶ 22 Neither the current nor the former versions of RCW 9.94A.728 authorize DOC to categorically exempt offenders who meet the criteria of sexually violent predators, nor does the statute allow DOC to decide to refuse to approve a release plan *724 because "no community release address, absent one with a 24/7 prison-like monitoring and lock-down would be safe enough to protect the community." Even if a forensic evaluation concludes an inmate meets the criteria of a sexually violent predator, "24/7 prison-like monitoring and lock-down" can only be accomplished within the constraints of due process by means of a civil commitment proceeding. Until then, DOC cannot categorically exempt a sex offender like Mattson from consideration for transfer to community custody and must evaluate a proposed release plan on its merits.[6]
¶ 23 We grant Mattson's personal restraint petition and direct DOC to consider his most recent release plan and proposed residence at the Mack House on its merits.
WE CONCUR: APPELWICK, C.J., and BECKER, J.
NOTES
[1] In his direct appeal, we affirmed Mattson's conviction but vacated the sentence under the two strikes statute and remanded for resentencing. State v. Mattson, 117 Wash.App. 1050 (2003). On remand the parties agreed to an exceptional sentence of 120 months.
[2] June 25, 2002 Policy Directive 350.200, p. 7.
[3] Under RCW 71.09.020(16) a sexually violent predator is defined as "any person who has been convicted or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility."
[4] Because Mattson had had no other or prior means to obtain judicial review, the requirement to show actual and substantial prejudice or a fundamental defect resulting in a miscarriage of justice does not apply. In re Pers. Restraint of Capello, 106 Wash.App. 576, 580, 24 P.3d 1074 (2001).
[5] See Dutcher, 114 Wash.App. at 764 n. 26, 60 P.3d 635, citing Donna Schram & Cheryl Darling Milloy, "Washington State Institute for Public Policy, Sexually Violent Predators and Civil Commitment: A Study of the Characteristics and Recidivism of Sex Offenders Considered for Civil Commitment But For Whom Proceedings Were Declined" (1998).
[6] The amended policy DOC submitted as supplemental authority also appears to violate RCW 9.94A.728 and our decisions in Dutcher and Liptrap. According to DOC, "[the] December 25, 2006 policy does not contain the amendments of the June 25, 2002 policy regarding the non-approval of community protection plans of sex offenders found to meet sexually violent predator criteria." But as Mattson points out, the attachments incorporated by reference in the policy provide that "[o]ffenders who have been found by ESRC to meet the definition of an SVP shall not be . . . (2)[r]eleased to Community Placement."