[No. 81324-8. En Banc.]

Argued January 13, 2009. Decided August 20, 2009.

*In the Matter of the Personal Restraint of* MARK DAVID MATTSON, *Respondent.*

*Robert M. McKenna, Attorney General,* and *Alexei A. Kostin, Gregory J. Rosen,* and *John J. Samson, Assistants,* for petitioner.

*Gregory C. Link* (of *Washington Appellate Project*), for respondent.

¶1 MADSEN, J. — Respondent Mark Mattson was convicted of the crime of indecent liberties by forcible compulsion and sentenced to 120 months' incarceration followed by 36-48 months of community custody. As a sex offender, Mattson was ineligible for early release under RCW 9.94A.728(1).[1] However, with time for good behavior, he became eligible for transfer into community custody. RCW 9.94A.728(2).

¶2 Mattson submitted release plans as provided for in RCW 9.94A.728(2)(c). Following Department of Corrections (DOC) Policy Directive 350.200, which prohibits the release of sexually violent predators into the community, the DOC denied Mattson's transfer to community custody. Mattson filed a personal restraint petition (PRP) challenging the denial in the Court of Appeals, Division One. The Court of Appeals held that Mattson had a protected liberty interest in early release to community custody, granted his PRP, and directed DOC to conduct a substantive review of his proposed release residence. *In re Pers. Restraint of Mattson*, 142 Wn. App. 130, 172 P.3d 719 (2007). After reviewing and denying Mattson's most recent plan, DOC petitioned this court for discretionary review of the Court of Appeals' decision granting Mattson's PRP.

¶3 We now reverse and hold that RCW 9.94A.728(2) does not establish a protected liberty interest in early release to community custody. DOC had statutory authority to determine eligibility standards for sex offenders for release to community custody and it had authority to deny Mattson's eligibility for such release on the basis of the psychological evaluation. Because Mattson did not meet the eligibility criteria, DOC had no duty under the statute or DOC policy to evaluate the merits of Mattson's release plan.

---

[1] RCW 9.94A.728 was amended by Laws of 2009, ch. 399 (effective August 1, 2009), Laws of 2009, ch. 441 (effective August 1, 2009), and Laws of 2009, ch. 455 (effective July 26, 2009). This opinion applies the former version of RCW 9.94A-.728 as amended by Laws of 2007, ch. 483, § 304.

## FACTS

¶4 Mark Mattson has a history of sexual offenses against young girls. In 1985 he pleaded guilty to statutory rape for sexually assaulting a six year old. After three years at Western State Hospital's Sexual Psychopath Treatment Program, he was released. Mattson self-reported six to seven additional sexual assaults against children after his release from Western State. In 1998 Mattson was convicted of indecent liberties by forcible compulsion and sentenced to 120 months' incarceration with an additional 36-48 months of community supervision at the completion of his sentence. His maximum term expired in November 2008.

¶5 In 2003, the DOC End of Sentence Review Committee reviewed Mattson's sentence and designated him a level three (highest risk) sex offender because his crimes were against unknown, vulnerable victims. In October 2003, the King County prosecutor's office asked DOC to forward all of Mattson's records so that they could initiate civil commitment proceedings. A November 6, 2003, entry in Mattson's "chrono report"[2] indicates that he "scores as stranger/ predatory/imminent threat." Resp. of DOC, Attach. B at 6 (capitalization omitted).

¶6 In December 2003, Mattson was referred by DOC for a forensic evaluation by a department psychiatrist. Mattson refused to be interviewed for the evaluation. The department psychiatrist reviewed Mattson's records and criminal history and concluded that Mattson met the criteria for a sexually violent predator established in RCW 71.09.020.[3] The psychiatrist based his determination on Mattson's prior unsuccessful treatments for sexual devi-

---

[2] A "chrono report" is a chronological case summary for an offender who is in DOC custody or is under its jurisdiction. Suppl. Br. of DOC at 5.

[3] " 'Sexually violent predator' means any person who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility." RCW 71.09.020(18).

ancy, his history of arrests for both sexual and nonsexual crimes, and Mattson's own admission that in addition to his two convictions for sex offenses, he had abused 50 to 60 victims—girls from the ages of 3 to 10. Suppl. Br. of DOC, App. 6, at 4. On August 9, 2005, DOC received the psychiatrist report reaffirming that Mattson met the criteria for a sexually violent predator. During the 2005 evaluation, the psychiatrist conducted a clinical interview with Mattson during which Mattson described his technique for approaching "single children in residential areas" and his history of abuse against prostitutes as well as abuse of drugs and alcohol. Suppl. Br. of DOC, App. 5, at 5 (emphasis omitted), 6-7.

¶7 Starting in November 2003, Mattson submitted a total of six plans for release to community custody.[4] Mattson's sixth plan was submitted on April 19, 2006. The corrections officer did not conduct a site investigation of the sixth plan and denied it on the basis of a DOC policy directive stating that for sexually violent predators, "no proposed community release plan will be deemed sufficiently safe to ensure community protection."[5] Suppl. Br. of DOC, App. 4, at 2.

¶8 The Court of Appeals held RCW 9.94A.728(2) does not "authorize DOC to categorically exempt offenders who meet the criteria of sexually violent predators" and directed DOC to consider Mattson's "most recent release plan and proposed residence . . . on its merits."[6] *Mattson*, 142 Wn. App. at 140.

---

[4] Mattson's first community release plan was submitted in November 2003. The November 2003 plan was submitted before Mattson was resentenced in December 2003 and was rejected on December 19, 2003 because the resentencing made him ineligible for early release at that time.

[5] Our decision addresses the DOC policy under which Mattson was denied release to community custody. DOC has since amended this policy. We do not address the merits of this amended policy.

[6] Pursuant to Division One's grant of Mattson's PRP, DOC conducted a site investigation of Mattson's sixth plan on January 3, 2008. This plan was denied because of the location's proximity to children, the low level of supervision at the residence, its proximity to a bar, and Mattson's criminal history and criminal behavior patterns. Suppl. Br. of DOC, App. 10, at 8.

## ANALYSIS

 ¶9 As an initial matter, we address the court's authority to issue an opinion in Mattson's case. It is clear from the record that Mattson's maximum term expired in November 2008. The expiration of Mattson's maximum term technically renders his case moot. *In re Cross*, 99 Wn.2d 373, 376-77, 662 P.2d 828 (1983) ("A case is moot if a court can no longer provide effective relief."). However, "[t]he Supreme Court may, in its discretion, retain and decide an appeal which has otherwise become moot when it can be said that matters of continuing and substantial public interest are involved." *Sorenson v. City of Belling-ham*, 80 Wn.2d 547, 558, 496 P.2d 512 (1972). "Criteria to be considered in determining the 'requisite degree of public interest are the public or private nature of the question presented, the desirability of an authoritative determination for the future guidance of public officers, and the likelihood of future recurrence of the question.' " *Id.* (quoting *People ex rel. Wallace v. Labrenz*, 411 Ill. 618, 622, 104 N.E.2d 769 (1952)). "[M]ost cases in which appellate courts utilized the exception to the mootness doctrine involved issues of constitutional or statutory interpretation." *In re Pers. Restraint of Mines*, 146 Wn.2d 279, 285, 45 P.3d 535 (2002) (citing *Hart v. Dep't of Soc. & Health Servs.*, 111 Wn.2d 445, 449, 759 P.2d 1206 (1988)).

 ¶10 The interpretation of RCW 9.94A.728 and the Court of Appeals' holding that offenders have a protected liberty interest in early release to community custody present issues of a "public nature." *See In re Marriage of Horner*, 151 Wn.2d 884, 892, 93 P.3d 124 (2004) (holding issue to be "of a public nature" because it involved inter-pretation of a statute and because the Court of Appeals' opinion was not limited to the facts). Additionally, though this court can no longer provide Mattson relief, his situation is not unique. In 2007 alone Washington sentenced 915

people for felony sex crimes. WASHINGTON STATE STATISTICAL ANALYSIS CENTER, CRIMINAL JUSTICE DATA BOOK, *available at* http://wa-state-ofm.us/CrimeStatsOnline/index.cfm (last visited Apr. 23, 2009). DOC has an ongoing duty to assess the risk level of sex offenders and their potential for release into the community. RCW 72.09.340(1) ("In making all discretionary decisions regarding release plans for and supervision of sex offenders, the department shall set priorities and make decisions based on an assessment of public safety risks."). This ongoing duty, coupled with continuing criminal activity, ensures that issues regarding the interpretation of RCW 9.94A.728 are likely to recur. Therefore, "the real merits of the controversy remain unsettled," namely, whether RCW 9.94A.728 creates a due process liberty interest in early release to community custody and whether DOC's policy that "no plan" will adequately protect the community from sexually violent predators violates that due process interest. *Sorenson*, 80 Wn.2d at 558. We are, therefore, persuaded that the question presented should be decided here.

¶11 DOC asserts, "The Court of Appeals' finding of a protected liberty interest in RCW 9.94A.728(2)" is erroneous and in conflict with prior decisions of this court. Mot. for Discretionary Review at 10. We agree.

¶12 " 'A liberty interest may arise from the Constitution,' from 'guarantees implicit in the word "liberty," ' " or 'from an expectation or interest created by state laws or policies.' " *In re Pers. Restraint of Bush*, 164 Wn.2d 697, 702, 193 P.3d 103 (2008) (internal quotation marks omitted) (quoting *In re Pers. Restraint of McCarthy*, 161 Wn.2d 234, 240, 164 P.3d 1283 (2007)). "There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7, 99 S. Ct. 2100, 60 L. Ed. 2d 668 (1979); *Meachum v. Fano*, 427 U.S. 215, 96 S. Ct. 2532, 49 L. Ed. 2d 451 (1976); *In re Pers. Restraint of Cashaw*, 123 Wn.2d 138, 144, 866 P.2d 8 (1994). For a state law to create a liberty interest, it must

place substantive limits on official decision making in the form of " 'specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow'."[7] *Cashaw*, 123 Wn.2d at 144 (quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 463, 109 S. Ct. 1904, 104 L. Ed. 2d 506 (1989)); *Swenson v. Trickey*, 995 F.2d 132, 134 (8th Cir.), *cert. denied*, 510 U.S. 999 (1993). Only statutes that prescribe a given outcome for a specific set of facts create these "due process liberty interests"; "laws granting a significant degree of discretion cannot." *Cashaw*, 123 Wn.2d at 144.

¶13 "In *Greenholtz*, the Court held that the unique structure and language of a Nebraska parole statute, which mandated that the Board of Parole *shall* order an inmate's release *unless* it found one of four designated reasons for deferring parole, created a legitimate expectation of release. According to the Court, the mandatory language established a presumption that offenders would be released on parole and thus created a limited liberty interest." *McCarthy*, 161 Wn.2d at 241 (citation omitted). In contrast to the legitimate substantive expectations created by statutes with mandatory language, procedural statutes that merely " 'structure the exercise of discretion' " can create only the expectation that an agency will follow its own procedures. *Cashaw*, 123 Wn.2d at 146-48 (quoting *Toussaint v. McCarthy*, 801 F.2d 1080, 1094 (9th Cir. 1986)).

¶14 In *Cashaw* we held that "[d]ecisions as to an inmate's parolability are not guided by 'substantive predicates' . . . from which 'a particular outcome must follow'." *Id.* at 146. This holding was based, in part, on the fact that the statute at issue established only "the procedures for official

---

[7] In the context of internal prison regulations guiding prisoner discipline, which do not carry the force of law, we are aware that a different analysis applies to determine the existence of a liberty interest. *Sandin v. Conner*, 515 U.S. 472, 483-84, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995) (finding the "search for a negative implication from mandatory language in prisoner regulations" to be unwieldy, the United States Supreme Court held that the liberty interest in prisoner regulations would be "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life").

decisionmaking" and in part on the fact that parolability decisions, which require the Indeterminate Sentence Review Board to assess the degree to which an inmate has been rehabilitated, involve " 'subjective appraisals' " and " 'discretionary assessment of a multiplicity of imponderables'." *Id.* at 145-46 (quoting *In re Pers. Restraint of Ayers*, 105 Wn.2d 161, 165-66, 713 P.2d 88 (1986)).

■ ¶15 RCW 9.94A.728 establishes when an offender is eligible for release prior to the expiration of his or her sentence. Sex offenders are not eligible for early release; instead, under subsection (2), a person convicted of a sex offense "*may* become *eligible*, in accordance with a program developed by the department, for transfer to community custody status in lieu of earned release time." RCW 9.94A-.728(2)(a) (emphasis added). The statute gives DOC wide latitude in developing the standard of eligibility under "its program for release to the community." RCW 9.94A.728(2)(c).

¶16 The sole programmatic requirement in the statute is that DOC "shall . . . require *the offender* to propose a release plan that includes an approved residence and living arrangement." *Id.* (emphasis added). There is no requirement in the statute that DOC conduct a site investigation of every offender's proposed release residence. Instead, offenders "become *eligible*" for release only in accordance with "a program developed by the department." RCW 9.94A-.728(2)(a) (emphasis added). Once an offender's eligibility has been determined, DOC may "deny transfer to community custody status . . . if the department determines an offender's release plan, including proposed residence location and living arrangements" would, inter alia, place the offender at risk to reoffend or present a risk to victim safety or community safety. RCW 9.94A.728(2)(d). This subsection of the statute provides an *additional* means by which DOC can deny a sex offender release to community custody; it is not a requirement that DOC conduct a site investigation of an offender's proposed residence in order to revoke his eligibility for release.

¶17 The permissive terms of the early release statute, "may become eligible" and "may deny transfer," do not require DOC to grant an offender early release to community custody. RCW 9.94A.728(2)(a), (d). The statute does not create an expectation of release and cannot establish a liberty interest.

¶18 This reasoning is supported by the Ninth Circuit Court of Appeals in a recent case, *Carver v. Lehman*, 558 F.3d 869 (9th Cir. 2009). Carver is a convicted sex offender in Washington who submitted an early release plan to DOC in March 2002. His plan was denied under DOC Policy 350.200, which barred the investigation of release plans submitted by offenders who DOC determined appeared to meet the criteria of a sexually violent predator. *Id.* at 874. Carver filed a 42 U.S.C. § 1983 action against DOC, claiming a liberty interest in release to community custody. Noting the statute's "classically permissive language," the Ninth Circuit held that RCW 9.94A.728(2) sets no requirements under which DOC *must* grant an offender's plan and does not create a liberty interest in release to community custody. *Carver*, 558 F.3d at 875. Citing *Cashaw* with approval, the Ninth Circuit held that the statute merely establishes procedural requirements and in effect "reserves discretion for DOC officials precisely so they may deny release plans of prisoners *like Carver* who remain threats to the community." *Id.* at 876 (emphasis added).

¶19 Here, the Court of Appeals relied on two of its own prior opinions, *In re Personal Restraint of Dutcher*, 114 Wn. App. 755, 60 P.3d 635 (2002), and *In re Personal Restraint of Liptrap*, 127 Wn. App. 463, 111 P.3d 1227 (2005), to support the conclusion that offenders have a limited, but protected, liberty interest in early release to community custody. *Mattson*, 142 Wn. App. at 135. Both cases involved sex offenders who were seeking placement in community custody in lieu of early release. Both cases noted, " 'An inmate's interest in his earned early release credits is a limited, but protected, liberty interest.' " *Liptrap*, 127 Wn. App. at 469 (quoting *Dutcher*, 114 Wn. App. at 758). These cases conflict

with our holding in *Cashaw* that the decision regarding an inmate's releaseability is left to the discretion of the agency and that "procedural laws do not create liberty interests." *Cashaw*, 123 Wn.2d at 145.

¶20 The Ninth Circuit noted that the decisions in *Dutcher* and *Liptrap* used "liberty interest" as a Fourteenth Amendment term of art but in effect "concerned only the *procedural* right to compliance with individualized consideration on the merits of prisoners' release plans." *Carver*, 558 F.3d at 877. The Ninth Circuit holding is in accord with our decision in *Cashaw* that an offender may only justifiably expect DOC to follow its own policies regarding sex offender classification. *Cashaw*, 123 Wn.2d at 147-48.

¶21 We hold RCW 9.94A.728(2) grants sex offenders only the right to have DOC follow its own legitimately established policies regarding early release into community custody.

¶22 Mattson next argues that even if RCW 9.94A.728 does not create a liberty interest, DOC violated the terms of the statute by categorically denying sexually violent predators release to community custody. Suppl. Br. of DOC at 4. However, as previously noted, the statute grants DOC the authority to determine the eligibility of sex offenders for early release to the community. Further, RCW 9.94A.728 separates sex offenders from other inmates when it comes to the availability of early release. The legislature's decision to make sex offenders eligible only for release to *community custody* evinces a concern for the supervisability of and dangers presented by sex offenders in an environment less structured than an incarceration facility.[8] The sole requirement in RCW 9.94A.728(2)(b), that offenders submit a release plan that includes "an approved residence and living arrangement," also demonstrates legislative con-

---

[8] "Community custody is the intense monitoring of an offender in the community . . . . Although it has other purposes, community custody continues in the nature of punishment, and is not equivalent to general release." *In re Pers. Restraint of Crowder*, 97 Wn. App. 598, 600, 985 P.2d 944 (1999) (footnote omitted) (citing *State v. Ross*, 129 Wn.2d 279, 285, 916 P.2d 405 (1996)).

cern for community safety and offender supervisability. The legislature further demonstrates this concern in RCW 72.09.340(1): "[i]n making all discretionary decisions regarding release plans for and supervision of sex offenders, the department shall set priorities and make decisions based on an assessment of public safety risks."

¶23 "Washington courts have implied only one limit on the substance of the DOC's exercise of discretion: its reasons for denial must be 'legitimate.'" *Carver*, 558 F.3d at 877 (citing *Liptrap*, 127 Wn. App. at 475; *In re Pers. Restraint of Crowder*, 97 Wn. App. 598, 601, 985 P.2d 944 (1999)). DOC denies sexually violent predators eligibility for release to community custody in part because "[s]exually violent predators are by definition at high risk of reoffense." Mot. for Discretionary Review at 8 (citing RCW 71.09.020(18), which defines a "sexually violent predator" as someone who is "likely to engage in predatory acts of sexual violence if not confined in a secure facility"). This is a legitimate reason for denial.[9]

¶24 Mattson's rights under RCW 9.94A.728(2) are limited to ensuring that DOC follows its own established policies regarding the eligibility of sex offenders for early release into the community. DOC policy provides each sex offender the opportunity to participate in the department psychiatrist's forensic evaluation. Mattson had two such opportunities and took advantage of only one. Nonetheless, both times a department psychiatrist determined that Mattson met the statutory criteria for a sexually violent predator.

¶25 These evaluations are intensive. Mattson's psychiatrist reviewed 2,032 pages of available records and an additional 56 pages of treatment and monthly progress

---

[9] Contrary to the assertion by the dissent, the statute does not require DOC to consider an offender's proposed residence location before determining his initial *eligibility* for release. Dissent at 744-45.

The risk presented by Mattson's presence at the proposed residence is only *one* of many statutory reasons by which DOC may deny release to community custody *after* Mattson has been determined eligible. RCW 9.94A.728(2)(d) (allowing denial of an offender's "transfer to community custody" even after an offender becomes eligible for release on the basis of, but not limited to, four statutory factors).

notes from Mattson's previous sex offender treatment program, and conducted a four-hour clinical interview with Mattson. Mot. for Discretionary Review, App. 5. Mattson's risk level was assessed using three separate scientific diagnostic tools. "[A]ssessment with two actuarial measures of recidivism suggest[ed] that Mr. Mattson is likely to reoffend on a more probable than not basis." Mot. for Discretionary Review, App. 5, at 16. The DOC psychiatrist found that Mattson continued to meet the criteria as a sexually violent predator as described in RCW 71.09.020(18) on the bases of "predicate offenses, a history of pedophilic arousal, and a high probability of recidivism." Id. at 19. Mattson's evaluation and risk assessment followed established DOC policy. Under RCW 9.94A.728(2) Mattson could legitimately expect no more than this.

¶26 The legislature granted DOC the authority to develop a program structuring the guidelines for eligibility and release of sex offenders into the community before expiration of their sentences. Under that authority, and in accordance with statutory definition, DOC determined that sexually violent predators present too great a risk to community safety to be eligible for release prior to the expiration of their sentence. Under this policy, DOC denied Mark Mattson's eligibility for release to community custody. We find no error in the department's actions and reverse the Court of Appeals.

C. Johnson, Owens, Fairhurst, J.M. Johnson, and Stephens, JJ., concur.

¶27 Alexander, C.J. (dissenting) — I dissent because, in my view, the majority errs in upholding the decision of the Department of Corrections (DOC) denying Mark Mattson's sixth plan for release to community custody. In my judgment DOC wrongly adhered to its policy directive, which provided in part that a release plan is insufficient in cases where DOC's expert concludes that the party submitting

the plan meets the criteria for civil commitment.[10] DOC should have based its decision on a review of the merits of Mattson's plan, and for that reason, I would affirm the Court of Appeals' decision granting Mattson's personal restraint petition (PRP).

¶28 At the outset, it is important to observe that Mattson has never been adjudicated to be a sexually violent predator (SVP) pursuant to the requirements set forth in chapter 71.09 RCW for a civil commitment.[11] A mere conclusion by a DOC psychiatrist that Mattson meets the definition of an SVP does not fulfill these requirements. Put simply, Mattson cannot be judged an SVP unless and until: the State files a petition alleging he is such a predator and states sufficient facts to support such allegation, a probable cause determination is made by a superior court judge, an evaluation is conducted, the matter is tried, and a trial judge or a jury finds beyond a reasonable doubt that Mattson is an SVP. RCW 71.09.030, .040, .050, .060.

¶29 In reaching my decision, I find myself in agreement with the reasoning articulated by the Court of Appeals in *In re Personal Restraint of Dutcher*, 114 Wn. App. 755, 60 P.3d 635 (2002), that RCW 9.94A.728(2)(c) and (d)[12] "compel[] DOC to require offenders to develop a release plan, and *requires DOC to base its community custody eligibility decisions on the merits of the release plan." Dutcher*, 114

---

[10] The DOC policy directive stated in part, "For those cases where a forensic evaluation has been completed and an expert has concluded that the offender does meet the criteria for civil commitment as defined under RCW 71.09.020, no proposed community release plan will be deemed sufficiently safe to ensure community protection." Suppl. Br. of DOC, App. 4, at 2. As the majority observes, DOC has since amended this policy. Majority at 735 n.5.

[11] RCW 71.09.020(18) defines a " '[s]exually violent predator' " as "any person who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility."

[12] RCW 9.94A.728 was amended by Laws of 2009, ch. 399 (effective August 1, 2009), Laws of 2009, ch. 441 (effective August 1, 2009), and Laws of 2009, ch. 455 (effective July 26, 2009). This opinion applies the former version of RCW 9.94A.728 as amended by Laws of 2007, ch. 483, § 304.

Wn. App. at 762 (emphasis added).[13] These provisions state as follows:

> (c) The department shall, as part of its program for release to the community in lieu of earned release, require the offender to propose a release plan that includes an approved residence and living arrangement . . . ;
>
> (d) The department may deny transfer to community custody status . . . if the department determines an offender's release plan . . . may violate the conditions of the sentence or conditions of supervision, place the offender at risk to violate the conditions of the sentence, place the offender at risk to reoffend, or present a risk to victim safety or community safety.

RCW 9.94A.728(2). It seems clear from a plain reading of the foregoing that the legislature has not authorized DOC to reject an eligible offender's release plan simply because a DOC psychiatrist concludes that the offender meets the criteria for a civil commitment as defined under RCW 71.09.020. *Cf. Dutcher*, 114 Wn. App. at 765-66 ("The legislature has . . . not authorized any exemption from this process simply because [the End of Sentence Review Committee] believes the offender qualifies for a civil commitment hearing.").

¶30 The majority's contrary understanding of the applicable statute contravenes the well-settled principle of statutory construction that "[t]he Legislature 'does not engage in unnecessary or meaningless acts, and we presume some significant purpose or objective in every legislative enactment.'" *In re Recall of Pearsall-Stipek*, 141 Wn.2d 756, 769, 10 P.3d 1034 (2000) (quoting *John H. Sellen Constr. Co. v. Dep't of Revenue*, 87 Wn.2d 878, 883, 558 P.2d 1342 (1976)). The majority does not adhere to this principle, reading the statute in a way that renders virtually meaningless the language, quoted above, that directs

---

[13] In *Carver v. Lehman*, 558 F.3d 869 (9th Cir. 2009), both the majority opinion and the opinion concurring in the judgment recognized that subsections (2)(c) and (2)(d) of RCW 9.94A.728 mandate that DOC make an individualized determination based on the merits of the plan. *Carver*, 558 F.3d at 875 n.8 (quoting *Dutcher*, 114 Wn. App. at 762), 884 (Reinhart, J., concurring) (quoting *Dutcher*, 114 Wn. App. at 762).

DOC, as part of its program for release to the community, to require eligible offenders to propose release plans. *See* RCW 9.94A.728(2)(c). Under the majority's interpretation, an eligible offender's plan is merely a purposeless proposal that DOC need not consider.[14] As noted, however, we must presume that the legislature had some purpose and objective when it mandated that DOC require offenders to submit a plan as part of DOC's program and required that such proposals are to be reviewed by DOC in determining whether to "deny transfer to community custody status in lieu of earned release time." RCW 9.94A.728(2)(d).

¶31 The majority holds that DOC's rejection of Mattson's release plan was in accord with RCW 9.94A.728(2) because its reason was " 'legitimate.' " Majority at 742 (quoting *Carver v. Lehman*, 558 F.3d 869, 877 (9th Cir. 2009) (in which that court said, "Washington courts have implied only one limit on the substance of the DOC's exercise of discretion: its reasons for denial must be 'legitimate' ")). Although I do not disagree with the proposition that DOC's basis for rejecting a release plan must be legitimate, it is apparent to me that DOC's reason for denying Mattson's plan was illegitimate in that it was not based upon a review of the merits of Mattson's plan.

¶32 Finally, I recognize that an offender identified by a DOC psychiatrist as meeting the definition of an SVP may ultimately have his release plan rejected.[15] Nevertheless, RCW 9.94A.728(2)(d) does not permit DOC to substitute a psychiatrist's conclusion for one that DOC is to reach based on review of a release plan. DOC's citation to its own policy directive does not avail it. In my judgment, DOC violated

---

[14] This is demonstrated by DOC's arguments that suggest there was no reason for it to consider a plan submitted by Mattson. *See* Resp. of DOC at 4 ("No community release plan will be safe enough for an offender like Mr. Mattson."); Resp. to Pet'r's Suppl. Br. at 5 ("The chances of Mr. Mattson obtaining a release address in the community that will be secure enough to prevent him from engaging in predatory acts of sexual violence are non-existent.").

[15] As the majority notes, Mattson's plan was later reviewed and rejected by DOC following the decision of the Court of Appeals. Majority at 733, 735 n.4. That action by the DOC is not before us, as our review is limited to the Court of Appeals' decision granting Mattson's PRP.

the above cited statute when it denied Mattson's sixth release plan based not on a review of the plan, but instead on a policy directive that contravened DOC's statutory obligation. For these reasons, I would affirm the Court of Appeals' decision granting Mattson's PRP.[16]

SANDERS and CHAMBERS, JJ., concur with ALEXANDER, C.J.

[No. 81556-9. En Banc.]
Argued June 9, 2009. Decided August 20, 2009.

---

[16] I would resolve this case without reaching the liberty interest question. Nevertheless, I briefly mention it here to express my disagreement with the holding of the majority that RCW 9.94A.728(2) "cannot establish a liberty interest." Majority at 740. To the contrary, I believe that under the canon of statutory construction expressio unius est exclusio alterius—express mention of one implies exclusion of all others—subsection (2)(d) establishes a liberty interest because it creates a presumption in favor of transfer to community custody status for eligible offenders who propose a release plan and limits the discretion of DOC to deny transfer. *See In re Pers. Restraint of McCarthy*, 161 Wn.2d 234, 241, 164 P.3d 1283 (2007) (citing *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 12, 99 S. Ct. 2100, 60 L. Ed. 2d 668 (1979)); *see also Carver*, 558 F.3d at 875 n.11 (quoting *Bd. of Pardons v. Allen*, 482 U.S. 369, 378, 107 S. Ct. 2415, 96 L. Ed. 2d 303 (1987)). My view relies in part on our recent decision in *Adams v. King County*, 164 Wn.2d 640, 650, 192 P.3d 891 (2008), where we applied the canon to a statute using "if" and "may" in a similar manner and effect as subsection (2)(d).