IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Personal Restraint of: <br><br> JAMES LARRY JOHNSON III, <br><br>                 Petitioner. | No. 85785-1-I <br><br> DIVISION ONE <br><br> UNPUBLISHED OPINION |

HAZELRIGG, C.J. — James Johnson filed a personal restraint petition challenging two disciplinary infractions imposed by the Department of Corrections (DOC). The acting chief judge of this court dismissed his challenge to Infraction Group Number (IGN) 28 under RAP 16.11(b) and referred the challenge to IGN 27 to a panel for review and determination. After the referral, DOC agreed to expunge IGN 27 and rendered the petition moot. Johnson now asks this court to nonetheless reach the merits and argues that IGN 27 presents questions of continuing and substantial public interest such that an exception to mootness applies. Because the petition does not meet the factors for review of moot claims, we dismiss Johnson's petition.

FACTS

James Johnson is currently incarcerated at Stafford Creek Corrections Center in Aberdeen. The infractions at issue occurred while he was incarcerated at Coyote Ridge Corrections Center. On September 6, 2023, Johnson filed a pro

se personal restraint petition (PRP), seeking relief from disciplinary confinement and requesting expungement of two disciplinary sanctions, IGN 27 and IGN 28.

After Johnson and DOC completed briefing, the acting chief judge of this court dismissed Johnson's challenge to IGN 28 as frivolous under RAP 16.11(b).[1] However, the judge referred the challenge to IGN 27 to a panel and appointed counsel.[2] The court clerk then set a new briefing schedule. Before Johnson submitted his supplemental brief, the parties jointly moved for an extension of time to file. That motion included a declaration from the prison disciplinary program manager, who confirmed that DOC had expunged IGN 27 from its system, along with the sanctions it imposed.

Johnson received IGN 27 for allegedly attempting to introduce, possess, or use a cell phone without authorization. On July 12, Corrections Officer (CO) Daniel Carrillo filed a serious infraction report under WAC 137-25-030(1) (Category A, 882), which prohibits "introducing, possessing, or using a cell phone, electronic/wireless communication device, or related equipment without authorization" while in a state prison. In the narrative he submitted pursuant to the infraction report, Carrillo described the exchange at the "G-Unit A pod officer station" as follows:

[JOHNSON:] Hey C/O we need to have a conversation.

[CARRILLO:] What's going on?

[JOHNSON:] I got about 5.

---

[1] *See* Order Dismissing Personal Restraint Petition in Part and Referring Remaining Claim to a Panel of Judges, *In re Pers. Restraint of Johnson*, No. 85785-1-I (Wash. Ct. App. Apr. 30, 2024), at 6.
[2] *Id.*

[CARRILLO:] 5 what?

[JOHNSON:] $5,000 just like a cell phone or something.

[CARRILLO:] Are you being serious?

[JOHNSON:] I'm just messing around with you.

[CARRILLO:] Don't talk to me about that stuff I would never do that.

Carrillo interpreted Johnson's comments as an attempted bribe to bring in a cell phone or similar device.

On July 14, 2023, DOC served Johnson with notice of his disciplinary hearing and informed him of his right to call witnesses or request witness statements. Johnson declined to exercise either right at that time and refused to sign the notice form.

DOC held the disciplinary hearing on July 17. Johnson pleaded not guilty. He denied speaking with Carrillo and suggested the officer had mistaken him for someone else. Johnson said the report sounded, at most, like someone joking. With regard to any conversations with Carrillo, he recalled Carrillo once disallowing him hot water, but denied making any offer involving a phone or money during that interaction. Johnson found the alleged comment, offering $5,000 for a "cell phone or something," illogical and inconsistent with his behavior.

During the hearing, Johnson requested that Carrillo be asked to clarify what, if anything, he said after Carrillo told him, "I would never do that." Johnson doubted he would have ended a conversation on that note and asked the hearing officer about "what was said after [Carrillo's] last statement about um, 'I would never do anything like that' or something like that?" The hearing officer then summarized

the available information at that point and asked if Johnson wanted to request or submit anything else before the officer began deliberation and the following exchange occurred:

JOHNSON: If you feel like the question that I just asked serves any purposes about uh, his statement if anything was said after that? Like it, it just stops so it, was it like did I say okay, or did I—

[HEARING OFFICER]: I have no idea. It's your testimony not mine.

JOHNSON: No. I'm talking about his testimony. His narrative.

[HEARING OFFICER]: And that's his testimony, not mine's [sic] so I don't understand what you're getting at?

JOHNSON: I'm asking if, so I wanna ask him the question.

[HEARING OFFICER]: You want a witness statement from Carrillo?

JOHNSON: Yeah well or question or I just want to know what was said after that? If anything was said after that and I'm asking you if, if it's like does it serve a purpose?

[HEARING OFFICER]: Right eh uh, if he said no nothing was said after that, or if he said yes Johnson uh, tried to convince me that he was just joking. How does that have play in a finding? Ah, what, what, what are you hoping he'll say and how does that support—

JOHNSON: I—

[HEARING OFFICER]: exculpatory evidence?

JOHNSON: I guess I'm, I'm just trying to understand the situation better. I don't know. Is, it just didn't seem right to me. I don't know. I just, it, it I know that I never had a conversation with him about a cell phone, trying to get a cell phone, trying to buy one, or give him money, or anything of that nature. I never have in the past and it definitely wouldn't be with a CO I don't even know. Like I don't even know who that is. So I, I don't know. I'm just trying to find something that, cause it's basically my word versus his words.

- 4 -

After discussing another aspect of Carrillo's version of events set out in the narrative, the hearing officer agreed to ask Carrillo the follow-up question Johnson had posed, continued the hearing for that purpose, and concluded the hearing and its recording.

Carrillo responded in a supplemental witness statement. When asked what, if anything, Johnson said after having been told that Carrillo "would never do that and to not talk about it with [him] anymore," Carrillo replied, "Incarcerated Individual Johnson . . . responded by saying, 'I try that with all new staff.'" When asked why he believed Johnson was serious about the inquiry and not joking around from the start, Carrillo stated, "I believe Johnson was serious about the inquiry because when he asked me . . . about bringing in the phone he saw my demeanor change and quickly back tracked and Johnson said, 'I'm just messing around with you.'"

The hearing resumed on July 19. After reviewing Carrillo's statement, Johnson denied its truthfulness:

> It's definitely a fabrication. I don't know where he's coming up with this stuff from. I, yeah I figured if, if I asked that question I just wanted to know if he would come up with anything else and his story that he didn't say before and I mean to me, by him doing that why, if all that was the case why wouldn't he mention that in the first place? So I mean, I, I already knew it was a lie from the jump but he just further elaborated on a lie. I just wanted to know if he was going to change his story or keep it the same. So no I'm, I still plead not guilty. I, it's absolutely not the truth. I never asked him to buy a cell phone from him or bring one in or anything of that nature.

The hearing officer found Johnson guilty, stating,

> I am persuaded that you have more reason to be uh, misleading than the staff member and there's no reason uh, you put forward why he would make this story up against you, just saying it's not true, it didn't happen. I didn't approach this officer station then I said you did not

approach that officer station that day and said well I'm always at the officer station. I don't know if I did or didn't.

The officer imposed 30 days loss of phone privileges and 45 days loss of good conduct time.

Johnson appealed and raised several objections to the disciplinary process. He argued that after the first hearing ended and the recording device turned off, he changed his mind and no longer wanted a supplemental statement from Carrillo. Johnson said the officer told him it was too late, since the recording device had been turned off. Johnson also contended that the hearing officer's follow-up questions may have prompted Carrillo to embellish his story:

> I feel as if Carrillo was coached in sense into adding his additional statement by [the hearing officer], because he knew there was no evidence against me and he wanted to make his findings of guilt based on a seemingly stronger case, or at least one that made more sense.

Johnson maintained that Carrillo's account, even if accepted as true, described nothing more than Johnson joking around. He also challenged Carrillo's credibility, noting the absence of corroboration, in the following statement:

> In his supplemental statement he says that I told him I do this to all the new officers, but no other officer can attest to this. I never attempted to introduce a cell phone or anything of the nature, and I feel that I am being harassed by staff following two cell and strip searches that were done on 6/28 and 6/30 where it was rumored they were searching for a cell phone or the like, but nothing was found. My infraction for this occasion (finding tattoo paraphernalia, etc.) was dismissed, and two days later this allegation was made. I informed CC2 Kessler that I've been infraction free for over a year and I feel I was being harassed by staff and inmates, and wanted to leave ASAP, before anything transpired hindering me from achieving success and not even a week later all of this happened. I have no history of introducing contraband and being so close to transferring somewhere closer to my family and having a review about a month away I would not do anything to jeopardize that.

The superintendent denied Johnson's appeal, reasoning that he had received a fair and impartial hearing, and concurred with the hearing officer's findings.

After having exhausted the administrative appeal process, Johnson timely filed this PRP.

ANALYSIS

I.      Standard of Review

Relief from sanctions imposed in a prison disciplinary hearing is available only if a petitioner shows current unlawful restraint.  *In re Pers. Restraint of Grantham,* 168 Wn.2d 204, 212-13, 227 P.3d 285 (2010); *see also* RAP 16.4(b), (c).   Restraint includes confinement in violation of constitutional or statutory protections.  *See Grantham*, 168 Wn.2d at 211; RAP 16.4(c)(6).  When Johnson filed his pro se petition, he was incarcerated, had a serious infraction on his record, and had lost good conduct time credits and phone privileges as a result.  His status at the time of the filing satisfies the threshold showing of restraint.

Incarcerated people are not entitled to the full range of constitutional protections that apply in criminal prosecutions.  *Grantham*, 168 Wn.2d at 214-15.  Instead, our review of a disciplinary decision is limited to determining whether the action taken was "so arbitrary and capricious as to deny the petitioner a fundamentally fair proceeding." *In re Pers. Restraint of Reismiller*, 101 Wn.2d 291, 294, 678 P.2d 323 (1984).  A disciplinary action is not arbitrary or capricious if it meets the minimum due process protections applicable in prison disciplinary proceedings and is supported by "some evidence." *Grantham*, 168 Wn.2d at 215-

16. This deferential standard does not require the court to weigh evidence or assess credibility. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455, 105 S. Ct. 2768, 86 L. Ed. 2d 356 (1985). The relevant question is whether the record contains any evidence that could support the disciplinary board's conclusion. *Id.* at 455-56.

A petitioner must also demonstrate by a preponderance of the evidence that they were actually and substantially prejudiced by the constitutional error. *In re Pers. Restraint of Ali*, 196 Wn.2d 220, 242-43, 474 P.3d 507 (2020); *see also In re Pers. Restraint of Davis,* 152 Wn.2d 647, 671-72, 101 P.3d 1 (2004) ("To actually obtain relief on collateral review based on a constitutional error the petitioner must demonstrate by a preponderance of the evidence that petitioner was actually and substantially prejudiced by the error."). A rule is unconstitutionally vague if it either fails to define the offense with sufficient precision for a person of ordinary intelligence to understand or lacks clear standards to prevent arbitrary enforcement. *State v. Murray*, 190 Wn.2d 727, 736, 416 P.3d 1225 (2018).

Johnson avers that neither minimum due process nor sufficient evidence were provided, and he seeks reversal on both grounds. Specifically, he contends that the evidence underlying IGN 27 was insufficient to support a violation under subsection (882), which prohibits introducing, possessing, or using a cell phone, electronic/wireless communication device, or related equipment without authorization. He concedes that under WAC 137-25-030(1), attempting to commit a violation is treated the same as committing it. But, he argues that "[a]ttempting"

requires an actual effort under WAC 137-25-020(3) and joking about a bribe does not meet that threshold.

While Johnson's arguments implicitly raise concerns with regard to the First Amendment to the United States Constitution, he does not cite relevant authority or develop a constitutional challenge on that basis.[3]  He instead rests on an as-applied vagueness theory.  He contends that no reasonable person would interpret the rule to prohibit his statement and applying subsection (882) in this way fails to provide Johnson constitutionally adequate notice.  He argues that neither WAC 137-25-020(3) nor WAC 137-28-160(1), both of which use identical language to define "[a]ttempting" as "[p]utting for an effort to commit any violation," contain any language to suggest that jokes can trigger a disciplinary charge.

Here, Carrillo believed that Johnson's comments amounted to an attempted bribe to bring in a phone or similar device.  The hearing officer entered a finding to that effect that turned on his assessment of Carrillo's credibility, which falls outside the scope of our review.  *See State v. Mines*, 163 Wn.2d 387, 391, 179 P.3d 835 (2008) ("Credibility determinations are for the trier of fact and are not subject to review on appeal.").  During oral argument before this court, Johnson conceded that the standard of review for a sufficiency challenge is very deferential and we must view the record in the light most favorable to the hearing officer.[4]  Accordingly, we cannot disturb the hearing officer's credibility determination that

---

[3] Furthermore, at oral argument, Johnson conceded that he did not raise a First Amendment challenge.  Wash. Ct. of Appeals oral arg., *In re Pers. Restraint of Johnson*, No. 85785-1-I (Apr. 15, 2025), at 3 min., 18 sec., *video recording by* TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2025041286/.

[4] *Id.* at 5 min. 32 sec.

Carrillo's interpretation of the communication that Johnson's statements constituted an attempt was accurate.

More critically, since DOC has expunged the infraction and lifted the sanctions it imposed, it avers that we should dismiss Johnson's remaining challenge to IGN 27 because he is no longer restrained by the infraction and this court can offer no further remedy. Johnson agrees that his petition is moot but asks this court to reach the merits because the petition raises questions of continuing and substantial public interest. Accordingly, before reaching the merits of Johnson's petition, we must first review whether it presents issues of continuing and substantial public interest, such that an exception to the mootness doctrine applies.

II.    Mootness

A case becomes moot only when the court can no longer provide effective relief for the claimed legal error. *In re Det. of Cross*, 99 Wn.2d 373, 376-77, 662 P.2d 828 (1983). Although courts generally dismiss an appeal that raises only moot issues, we may review them when the case presents matters of continuing and substantial public interest. *See In re Pers. Restraint of Mattson*, 166 Wn.2d 730, 736, 214 P.3d 141 (2009).

We consider three factors to determine whether a moot appeal may still present matters of continuing and substantial public interest: (1) "'the public or private nature of the question presented,'" (2) "'the desirability of an authoritative determination for the future guidance of public officers,'" and (3) "'the likelihood of future recurrence of the question.'" *State v. Huckins*, 5 Wn. App. 2d 457, 463, 426

- 10 -

P.3d 797 (2018) (internal quotation marks omitted) (quoting *State v. Hunley*, 175 Wn.2d 901, 907, 287 P.3d 584 (2012)). We also evaluate the level of adverseness, quality of advocacy, and whether the issue is likely to escape review because the facts of the controversy are short lived. *Id*.

Here, Johnson identifies two questions of substantial and continuing public interest, including whether idle, joking banter constitutes an attempted violation under WAC 137-28-160(1) and whether DOC acts in an arbitrary or capricious manner when it charges an inmate under the more punitive of two overlapping WAC provisions.

DOC responds that Johnson fails to apply the controlling factors and this omission alone justifies denial of an exception to the mootness doctrine. We disagree with that procedural argument and evaluate the factors independently.

A.      Nature of the Question

DOC argues that Johnson's as-applied challenge to an expunged infraction, including whether he could be infracted for pure speech and not on some larger issue of statutory interpretation, only involves a private interest. But, that view understates the implications of Johnson's contention. The first question, whether a CO can discipline an inmate for speech that is plainly a joke, touches on the core boundary between protected speech and penal authority within a correctional facility. The nature of the question is public as it invites broader scrutiny of how officers interpret and apply the rules governing speech in a correctional facility.

B.     Desirability of Authoritative Guidance

DOC contends that courts have already addressed due process requirements and the evidentiary burden in PRPs challenging disciplinary infractions.  DOC's argument overlooks that there is no case law addressing whether DOC may rely on ambiguous speech to support an "attempt" charge under a serious infraction.  Still, because the superintendent's ruling rested on the hearing officer's credibility determination, that issue as presented here is not subject to our review.  *See Mines*, 163 Wn.2d at 391.  Johnson offers no authority that would allow us to reach behind the hearing officer's credibility determination with regard to Carrillo's statement.  Accordingly, we agree with the DOC on this factor.

C.     Likelihood of Future Recurrence

DOC avers that Johnson's claims stem from unique facts that are unlikely to recur.[5]  We disagree because inmates and COs interact on a daily basis and the possibility that another inmate might attempt to joke with a CO, particularly one they do not know particularly well, and face discipline as a result is not remote.  Even so, the likelihood that the issue will escape review is not present.  Incarcerated persons have access to the PRP process, which provides a sufficient vehicle for review.

---

[5] During oral argument before this court, Johnson conceded this point on this particular factor when he agreed with DOC that the unique facts of the case, specifically, the expression on the CO's face during the interaction versus a change in Johnson's demeanor, were unique and unlikely to recur.  Wash. Ct. of Appeals oral arg., *supra,* at 2 min., 3 sec.

Taken together, the factors weigh against a conclusion of a continuing and substantial public interest.  As such, Johnson has not established the exception to mootness and we decline to reach the merits.  The petition is dismissed as moot.

WE CONCUR: